**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MARISABEL BELLO** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:19-cv-00004-M** |
| | § | |
| **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; WELLS FARGO & COMPANY'S LONG-TERM DISABILITY BENEFITS PLAN,** | § | |
| | § | |
| **Defendants.** | § | |

**STIPULATION REGARDING PLEADINGS**

In order to expedite a resolution of the pleadings in this case, Plaintiff and Defendants hereby agree that:

(1) Plaintiff will filed the First Amended Complaint attached to this Stipulation as Exhibit A by February 19, 2019;

(2) Plaintiff's filing of the First Amended Complaint will moot the Partial Motion to Dismiss docketed as ECF Doc # 6; and

(3) Defendants will file a new Partial Motion to Dismiss on or before February 28, 2019 and Plaintiff will respond in the time allotted by the local rules.

Procedurally, this Stipulation shall constitute Defendants' written consent to the filing of the First Amended Complaint so as to satisfy Federal Rule of Civil Procedure 15(a)(2), with Defendants maintaining all rights to respond to the First Amended Complaint pursuant to the Federal Rules of Civil Procedure.

Date: February 19, 2019

Respectfully submitted,

*/s/ Christine A. Hopkins*
Christine A. Hopkins
Texas State Bar No. 24095768
TREMAIN ARTAZA, PLLC
13140 Coit Rd, #104
Dallas, TX 75240
christine@tremainartaza.com
Telephone: 469-573-0297
Facsimile: 214-254-4941

**ATTORNEY FOR PLAINTIFF**

*/s/ Iwana Rademakers*_____________
Iwana Rademakers
Texas State Bar No. 16452560
Law Offices of Iwana Rademaekers, P.C.
14785 Preston Road, Suite 550
Dallas, Texas 75254
iwana@rademaekerslaw.com
Main: (214) 579-9319
Fax: (469) 444-6456
Direct: (214) 564-9542

**ATTORNEY FOR DEFENDANTS LIBERTY LIFE ASSURANCE COMPANY OF BOSTON AND WELLS FARGO & COMPANY LONG-TERM DISABILITY BENEFITS PLAN**

## CERTIFICATE OF SERVICE

On February 19, 2019, I hereby certify that I have served all counsel and/or *pro se* parties of record by ECF, by mailing a copy of this document to them, or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

*/s/ Christine A. Hopkins*
Christine A. Hopkins

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION**

| | | |
|---|---|---|
| **MARISABEL BELLO** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:19-cv-00004** |
| | § | |
| **LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; WELLS FARGO & COMPANY'S LONG-TERM DISABILITY BENEFITS PLAN,** | § § § § | |
| | § | |
| **Defendants.** | § | |

**FIRST AMENDED ERISA COMPLAINT**

Plaintiff Marisabel Bello, for her First Amended ERISA Complaint against Defendants Liberty Life Assurance Company of Boston ("Liberty Mutual") and Wells Fargo & Company Long-Term Disability Benefits Plan ("the Plan"), would show as follows:

**I.**

**Parties, Jurisdiction, and Venue**

1. Plaintiff is an individual and a beneficiary of Defendant Wells Fargo & Company Long-Term Disability Benefits Plan which is a long-term disability benefits policy sponsored by Wells Fargo & Company for the benefit of employees of Wells Fargo & Company and issued, insured, and administered by Defendant Liberty Life Assurance Company of Boston.

2. Defendant Liberty Life Assurance Company of Boston is a New Hampshire corporation and, on information and belief, may be served through its registered agent for service of process in Texas, Corporate Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

3. Defendant Wells Fargo & Company Long-Term Disability Plan is the ERISA plan sponsored by Wells Fargo & Company, a California Corporation, which may be served through its registered agent for service of process in California, CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Ste 150N, Sacramento, CA 95833.

4. Jurisdiction is proper on the ground of the existence of a federal question under 28 U.S.C. § 1331 based on Plaintiff's claims under the Employee Retirement Income Security Act, 29 U.S. C. §1001 et seq. ("ERISA").

5. Venue is proper in the Northern District of Texas, Dallas Division pursuant to 29 U.S.C. § 1132(e) (2) because the Defendant can be found in Dallas County.

## II.

## Facts

6. As of November 2015, Plaintiff was employed with Defendant Wells Fargo & Company ("Wells Fargo").

7. Through her employment with Wells Fargo, Plaintiff was covered by the Wells Fargo & Company Long-Term Disability Benefits Plan ("the Plan').

8. The Plan is a long-term disability benefits policy issued, insured, and administered by Defendant Liberty Life Assurance Company of Boston ("Liberty Mutual").

9. Liberty Mutual is responsible for making long-term disability benefits payments to beneficiaries qualifying for benefits under the Plan.

10. Liberty Mutual is also responsible for deciding whether or not beneficiaries qualify for long-term disability benefits payments under the Plan.

11. In November of 2015, Plaintiff became unable to work due to fibromyalgia, chronic fatigue, sleep apnea, and other disabling conditions.

12. Plaintiff's disabling conditions have continuously disabled her from working from approximately November 18, 2015 through to the present.

13. Under the Plan, Plaintiff was entitled to start receiving long-term disability benefits if she remained disabled during and after an elimination period of 26 weeks.

14. Under the Plan, Liberty Mutual was obligated to provide Plaintiff with long-term disability benefit application and claims form if she remained disabled for more than 18 weeks and her doctor believed her disability would continue for longer than the 26-week elimination period.

15. Liberty Mutual violated the terms of Plan by failing to provide Plaintiff with a long-term disability benefit application and claims for despite knowing that Plaintiff, with support of her doctors, had sought and was seeking short-term disability benefits for the full 26-week elimination period due to a disability that had lasted for longer than 18 weeks and was expected to last longer than 26 weeks.

16. Liberty Mutual's failure to provide Plaintiff the long-term disability benefits application and claim forms in the Spring of 2016 caused Plaintiff to incorrectly conclude that she was not a covered beneficiary under the Plan.

17. Plaintiff was in fact a covered beneficiary of the Plan and would have been eligible to start receiving long-term disability benefit payments beginning on or about June 5, 2016 had Liberty Mutual provided her the application and claims forms to apply for long-term disability benefits at that time.

18. Liberty Mutual did not provide Plaintiff the long-term disability benefits application and claim form until after Plaintiff sought legal assistance from the Worker's Defense Project, a local non-profit, and from her present counsel and filed a lawsuit against Liberty Mutual and Wells Fargo

& Company on August 7, 2017 for the wrongful early termination of her short-term disability benefits claim.

19. On September 8, 2017, Liberty Mutual provided Plaintiff the long-term disability benefits application and claim forms for the first time, in response to a demand from Plaintiff's counsel that Liberty Mutual provide Plaintiff the necessary application and claims forms.

20. Liberty Mutual's failure to timely provide Plaintiff the long-term disability benefits application and claim forms thus caused a fifteen-month delay in the processing and evaluation of Plaintiff's claim for long-term disability benefits from Plaintiff's initial June 5, 2016 long-term disability benefit eligibility date.

21. Liberty Mutual's failure to timely provide Plaintiff the long-term disability benefits application and claim forms also precluded Plaintiff from seeking and utilizing assistance that Liberty Mutual offers to long-term disability claimants in applying for and getting approved for Social Security disability benefits.

22. Because Plaintiff did not even know she was eligible to apply for long-term disability benefits for fifteen months, and because Plaintiff was without any disability benefits or income during those fifteen months, Plaintiff suffered substantial financial struggles and could not afford to pay for COBRA insurance after her employment with Wells Fargo & Company ended on or about June 6, 2016.

23. Despite her loss of health insurance and because of the severity of her disability, Plaintiff continued to seek medical treatment and care from North Texas Area Community Health Centers, Inc., a local non-profit that provides medical "care regardless of income, residency status.

24. Also, despite Plaintiff's inability to obtain assistance from Liberty Mutual in applying for Social Security disability benefits, Plaintiff filed a claim on her own and ultimately hired a private

attorney to assist her in getting her Social Security disability benefits approved.

25. On September 19, 2017, Plaintiff timely submitted her long-term disability benefits application and claims form to Liberty Mutual before the October 22, 2017 deadline Liberty Mutual set for Plaintiff to complete these forms.

26. On her claim forms, Plaintiff disclosed to Liberty Mutual that she had filed a Social Security disability benefits claim, disclosed to Liberty Mutual a complete list of her treating doctors and her pharmacies, a Training and Education form listing her past work skills and experience, her Wells Fargo job description, her completed Social Security Administration ("SSA") Activities Questionnaire, and her SSA-3373-BK Function Report-Adult.

27. Despite knowing about Plaintiff's pending claim for Social Security disability benefits, Liberty Mutual did not request Plaintiff's Social Security claims file in the process of investigating Plaintiff's eligibility for long-term disability benefits.

28. Nor did Liberty Mutual request Plaintiff's pharmacy records nor Plaintiff's complete file from North Texas Area Community Health Centers, Inc.

29. Instead, on October 3, 2017, within less than two weeks of receiving Plaintiff's claims forms, Liberty Mutual spent $2,047.50 to have psychiatric and rheumatological peer reviews conducted on Ms. Bello's file.

30. Liberty Mutual then intentionally failed to provide its psychiatric and rheumatological peer review consultants material information contained in Plaintiff's claims file, including the Training and Education form listing Plaintiff's past work skills and experience, Plaintiff's Wells Fargo job description, Plaintiff's completed Social Security Administration ("SSA") Activities Questionnaire which listed Plaintiff's daily activity limitations and other self-

reported symptoms, and Plaintiff's SSA-3373-BK Function Report-Adult which contained a close relative's observations of Plaintiff's symptoms and limitations.

31. Liberty Mutual thus sought to illegally and improperly adversely influence the peer review process in Liberty Mutual's favor, and to ensure that its peer review consultants could not and would not take into account either Plaintiff's self-reported limitations and symptoms nor her close relative's observations of her symptoms and limitations nor Plaintiff's actual material job duties. *See Young v. Unum Life Ins. Co. of Am.*, No. CIV.A. 06-1570, 2007 WL 4365369, at *3–6 (W.D. La. July 3, 2007), *subsequently aff'd*, 309 F. App'x 887 (5th Cir. 2009) (holding that a denial of benefits was unsupported by substantial evidence when plan focus only on objectively verifiable parts of a fibromyalgia patient's records and disregarded the beneficiaries' self-reported symptoms).; *See Liebenguth v. Liberty Life Assur. Co. of Boston*, 2006 WL 870618, at *8 (W.D. Tex. Mar. 22, 2006) (finding that the failure of claims representatives and consulting doctors to consider and address a beneficiaries' actual job duties constituted an abuse of discretion).

32. On October 23, 2017, Liberty Mutual denied Plaintiff's claim for long-term disability benefits on the sole asserted basis that Plaintiff allegedly did not meet the Plan's definition of being disabled from performing the material and substantial duties of one's own occupation during the first 24 months of long-term disability benefits eligibility.

33. Liberty Mutual's October 23, 2017 denial letter did not cite to any other provisions of the Plan as a basis for the denial.

34. Liberty Mutual based its denial on the opinions of the very peer review consultants that Liberty Mutual biased by withholding material information regarding Plaintiff's claim from those consultants.

35. Liberty Mutual also allowed its peer review consultants to impose definitions and requirements of disability in their review of Plaintiff's medical symptoms, limitations, care, and treatment that were different from, and more strict than, the Plan's actual definition of disability.

36. Liberty Mutual's paid peer review consultants had a financial incentive to side with Liberty Mutual over Plaintiff and Liberty Mutual itself, as payor of benefits under the Plan, also had a financial incentive to deny Plaintiff's long-term disability benefits claim.

37. Under the Plan, Plaintiff was required to submit an internal appeal of Liberty Mutual's October 23, 2017 adverse benefit determination within 180 days from the issuance of the October 23, 2017 denial letter.

38. At the time, Plaintiff's Social Security disability benefits claim had progressed to the point where Plaintiff anticipated the holding of a final administrative law hearing and the rending a final decision before the internal appeal to Liberty Mutual was due.

39. On March 15, 2018, an Administrative Law Judge did render a final decision on Plaintiff's claim for Social Security disability benefits and determined that Plaintiff had been continuously disabled from working in any occupation since December 25, 2015.

40. Because Plaintiff was unable to obtain Social Security application assistance from Liberty Mutual, Plaintiff was obligated to pay a portion of her Supplemental Security Income ("SSI") back benefits to her private attorney in order to obtain retroactive and future SSI benefits from December 25, 2015 through to the present.

41. On April 18, 2018, Plaintiff timely submitted to Liberty Mutual an internal appeal of Liberty Mutual's October 23, 2017 adverse benefit determination enclosing, for Liberty Mutual's consideration, the Social Security Administration's favorable decision finding her disabled and other medical evidence of her past and ongoing disability.

42. On May 23, 2018, Liberty Mutual denied Plaintiff's internal appeal.

43. Liberty Mutual's May 23, 2018 informed Plaintiff that Plaintiff had a right to file an ERISA lawsuit to contest Liberty Mutual's denial of her long-term disability benefits claim and that the deadline for Plaintiff to file this instant lawsuit under the terms of the plan was October 23, 2020.

44. Plaintiff then timely filed this ERISA lawsuit to obtain her long-term disability benefits from Liberty Mutual and to obtain any other damages or injunctive relief available to her for Liberty Mutual's breaches of its fiduciary duty to Plaintiff.

## III.

## Count One – Denial of ERISA Benefits

## (Against Both Defendants)

45. For her first cause of action, Plaintiff would show that Liberty Mutual wrongfully denied her benefits due to her under the Wells Fargo & Company Long-Term Disability Benefits Plan.

46. Defendants are accordingly liable under Section 1132(a)(l)(B) of ERISA for all benefits due but not paid to Plaintiff under the Wells Fargo & Company Long-Term Disability Benefits Plan, prejudgment interest thereon and Plaintiff's attorney's fees, expenses and costs of court.

## IV.

## Count Two – Breach of Fiduciary Duty

## (Against Defendant Liberty Mutual)

47. For her second cause of action, Plaintiff would show that Defendant Liberty Mutual breached its fiduciary duty to Plaintiff under Section 1132(a)(3) of ERISA ERISA.

48. Defendant Liberty Mutual breached its fiduciary duty by failing to timely provide Plaintiff a long-term disability benefits application and claims form, and thus deprived Plaintiff of knowledge of her eligibility for benefits for fifteen months, deprived Plaintiff of a timely application and claims determination process, and deprived Plaintiff of benefits that otherwise would have been available to Plaintiff under the Plan, including free assistance with her Social Security disability benefits claim.

49. Defendant Liberty Mutual also breached its fiduciary duties to Plaintiff by violating a number of ERISA's minimum standards and requirements for the fair handling of disability claims and appeals.

50. Defendant Liberty Mutual violated section 1133(2) of ERISA which requires that a participant whose claim for benefits has been denied be afforded a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying his or her claim.

51. Defendant Liberty Mutual also violated one or more of the requirements of 29 C.F.R. § 2560.503-1(b)(5) that benefit claim determinations be made in accordance with governing plan documents and that plan provisions be applied consistently with respect to similarly situated claimants.

52. Defendant Liberty Mutual also violated the requirements of 29 C.F.R. § 2560.503-1(g) as to the content of any adverse benefit determination.

53. Defendant Liberty Mutual also violated the requirement of 29 C.F.R. § 2560.503-1(h)(2)(iv) that a fiduciary take "into account all comments, documents, records and other information submitted by the claimant relating to the claim without regard to whether such information was submitted or considered in the initial benefit determination."

54. Defendant Liberty Mutual also violated the requirements of 29 CFR 2560.503-1(j) as to the manner and content of a benefit determination on review.

55. As a result of Defendant Liberty Mutual's breach of its fiduciary duties to Plaintiff, Plaintiff has suffered actual harm including deprivation of a full and fair internal benefits determination and appeals process, and the loss of benefits to which she was otherwise entitled.

56. As a remedy for Defendant Liberty Mutual's breach of its fiduciary duties to Plaintiff, Plaintiff seeks all equitable relief to which she may be entitled, including reformation and/or estoppel as to plan terms that would penalize Plaintiff for any delay in submitting her long-term disability benefits claim or in the claims determination process, reformation and/or estoppel for an internal or unwritten rules or policies applied to Plaintiff's claim that are inconsistent with the plan document, surcharge, and/or remand of Plaintiff's long-term disability benefits appeal back to Defendants for a new determination consistent with ERISA's requirements.

WHEREFORE, Plaintiff prays this Court grant her judgment against Defendants for all appropriate monetary, equitable, and injunctive relief available to her under ERISA.

Dated: February 11, 2019

Respectfully submitted,

TREMAIN ARTAZA PLLC

*<u>/s/ Christine A. Hopkins</u>*
Christine A. Hopkins
Texas State Bar No. 24095768
13140 Coit Road, Ste 104
Dallas, TX 75240
christine@tremainartaza.com
Telephone: 469-573-0297
Facsimile: 214-254-4941

**ATTORNEY FOR PLAINTIFF**