Civil Action No. 3:15-CV-02096-M
UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

# Tex. Gen. Hosp., LP v. United Healthcare Servs., Inc.

Decided Jun 28, 2016

BARBARA M. G. LYNN CHIEF JUDGE

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss [Docket Entry #45]. For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

## I. FACTUAL BACKGROUND

Plaintiffs Texas General Hospital, LP and Texas General GP, L.L.C. ("Plaintiffs") operate and manage Texas General Hospital ("TGH"), a general acute care hospital in Grand Prairie, Texas.[1] TGH is a for-profit hospital and, therefore, is not eligible for tax exempt status and receives no federal or state subsidies. Approximately 25% of TGH's patients are privately insured, and the remaining 75% are either uninsured or covered by Medicare or Medicaid. TGH is an "out-of-network" provider of medical services; as such, it does not have a contract with insurance carriers to accept discounted rates, and sets its own fees.

[1] In its recitation of the facts, the Court accepts all well-pleaded facts in the Second Amended Complaint as true, and views them in the light most favorable to Plaintiffs. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

Defendants United HealthCare Services, Inc.
2 ("UHS") and UnitedHealthcare Insurance *2 Company ("UHIC") (collectively "United" or "Defendants") provide health care insurance to consumers, and also administer health insurance plans offered by companies to their employees. TGH's patients include those who have subscribed to contracts for health insurance coverage with United, either through (1) employer-sponsored health benefit plans ("ERISA plans") or (2) private policies of insurance ("insurance") (both collectively called "plans"). In many cases, Defendants charge United's subscribers higher premiums to include "out-of-network" benefits in their plans. As a condition of providing treatment, TGH requires patients to execute an "Assignment of Benefits" form, pursuant to which it has submitted requests for reimbursement to United for services TGH has provided to United subscribers.

Between February 11, 2012, and June 30, 2015, TGH provided medical services to approximately 1,969 United subscribers. Before rendering such services, TGH received coverage verification and pre-certification that the services to be rendered by TGH were covered by a United policy or United-administered plan. TGH relied on those communications from United, without which TGH alleges it would not have provided the proposed medical treatment.

Plaintiffs allege, upon information and belief, that the plans require reimbursement of medical expenses incurred by United subscribers using "out-of-network" medical providers or facilities, at usual, customary, and reasonable rates. For services provided to the 1,969 United subscribers from approximately February 11, 2012, to June 30, 2015, TGH billed United $139,174,854.54, which Plaintiffs allege reflected the usual, customary, and reasonable rates for the particular medical services provided at TGH to those subscribers. For certain billed services,

casetext

United paid TGH nothing; for others, United paid substantially less than the amount billed. In many instances, United failed to provide a written explanation for cases when it did not
3 pay the *3 full amounts billed, or it provided inaccurate reasons for non-payment or reduction in payment. In other instances, United indicated that additional information was needed to process the claims. Plaintiffs allege that United received all information necessary to adjudicate and process the claims.

To date, United has reimbursed TGH $30,089,439.27, a fraction of the total amount billed. Even factoring in amounts United contends are the patients' responsibility under the plans (including co-payments, co-insurance, and deductibles), the total payments approved by United are $35,056,562.19, equivalent to approximately 25% of TGH's total billed charges, leaving an unpaid balance of at least $104,118,292.35 on the 1,969 claims. Plaintiffs claim the payment amount is dramatically less than the usual, customary, and reasonable reimbursement rates required under the plans.

On June 19, 2015, Plaintiffs filed this lawsuit against United under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and state law. They later filed a Second Amended Complaint, which is the live pleading. *See* Sec. Am. Compl. [Docket Entry #38] ("Complaint").[2] Plaintiffs' Complaint is generally based on allegations that United led Plaintiffs to believe the medical services they provided to United subscribers would be covered under the plans, that United wrongfully denied or reduced coverage under the terms of these plans, and that United's calculations of benefits resulted in substantial underpayments to Plaintiffs. Plaintiffs sue under federal law to recover benefits under 29 U.S.C. § 1132(a)(1)(B) ("§ 502(a)(1)(B)") (Count
4 One); for breach of fiduciary duty *4 under 29 U.S.C. § 1132(a)(3) ("§ 502(a)(3)") (Count Two); and for failure to provide a full and fair review of adverse benefits determinations and for violations of claims procedure regulations under 29 U.S.C. § 1133 ("§ 503") (Count Three). In addition, Plaintiffs bring state law claims for breach of contract (Count Four); breach of the duty of good faith and fair dealing (Count Five); and promissory estoppel (Count Eight). Plaintiffs seek damages and injunctive relief.

2 3 After Defendants filed a motion to dismiss Plaintiffs' First Amended Complaint, upon agreement of the parties, the Court granted Plaintiffs leave to amend, and denied Defendants' then-pending motion to dismiss as moot.

3 In the Complaint, Plaintiffs also asserted state law claims for common law breach of fiduciary duty (Count Six) and quantum meruit (Count Seven). However, in response to Defendants' current motion to dismiss, Plaintiffs concede that Counts Six and Seven "should be withdrawn." *See* Pls.' Resp. 25 n.4 [Docket Entry #51]. Accordingly, Counts Six and Seven will be dismissed.

Defendants move to dismiss all counts of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In addition, Defendants move to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court does not have subject matter jurisdiction over these claims because Plaintiffs lack standing.

4 4 Defendants assert these counterclaims: money had and received; unjust enrichment/restitution; negligent misrepresentation; debt collection practices violations; civil theft; common law fraud; and tortious interference. Defendants seek declaratory and compensatory relief, including recovery of alleged overpayments. Defs.' First Am. Countercl. [Docket Entry #39].

## II. APPLICABLE LEGAL STANDARDS

### A. Failure to State a Claim - Rule 12(b)(6)

casetext

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer
5 possibility *5 that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it does require more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Further, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss under Rule 12(b)(6), the Court generally cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). If documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims, but not attached, a defendant can attach them to a motion to dismiss and they will be considered. *Id.* In deciding a motion to dismiss, the Court may also consider matters of public record without converting the motion into one for summary judgment. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (citation omitted).

6 *6 **B. Lack of Subject Matter Jurisdiction - Rule 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Mississippi*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). In considering a Rule 12(b)(1) motion, which the Plaintiffs here assert only as to two counts of the Complaint, a "court may evaluate: (1) the complaint alone, (2) the complaint supplemented by undisputed fact evidence in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998). "A Rule 12(b)(1) motion that challenges standing based on the pleadings is considered a facial attack, and the court reviews only the sufficiency of the allegations in the pleading, presuming them to be true." *Crowder v. Village of Kaufman, Ltd.*, 2010 WL 2710601, at *1 (N.D. Tex. July 7, 2010) (Lynn, J.). When a defendant makes a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits and testimony, the plaintiff must submit evidence and prove by a preponderance of the evidence that the court has jurisdiction. *See id.*

## III. ANALYSIS

Defendants move to dismiss Plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to allege sufficient facts to

casetext

state a plausible claim for relief under ERISA or state law. Defendants also move to dismiss
7 Counts *7 Two and Five for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs lack standing. The Court considers each count of the Complaint in turn.

**A. Count One - Claim for Recovery of Benefits (ERISA § 502(a)(1)(B))**

Plaintiffs bring Count One against United pursuant to ERISA § 502(a)(1)(B), seeking to recover benefits under the terms of the United subscribers' ERISA plans.[5] Defendants move to dismiss Count One for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and, alternatively, for failure to exhaust administrative remedies. The Court first addresses the sufficiency of Plaintiffs' allegations.

[5] It is uncontested that Plaintiffs have derivative standing to assert the ERISA § 502(a)(1)(B) claim to recover benefits due under the terms of the plans.

1. *Sufficiency of Allegations*

A participant or beneficiary of an ERISA plan may bring a claim to recover benefits due under the terms of the plan pursuant to § 502(a)(1)(B). Benefits payable are limited to those specified in the ERISA plan. *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, 2012 WL 5868249, at *2 (N.D. Tex. Nov. 20, 2012). A complaint must contain enough facts about an ERISA plan's provisions to make a § 502 claim plausible and give the defendant notice as to which provisions it allegedly breached. *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 969 (E.D. Tex. 2011). Absent such allegations, a complaint fails to state a claim under ERISA § 502(a)(1)(B). *Paragon Office Servs.*, 2012 WL 5868249, at *2.

Defendants argue that Plaintiffs' claims under ERISA § 502(a)(1)(B) fail because the Complaint does not specifically identify the provisions of the ERISA plans that United allegedly breached. *See* Defs.' Br. 4 [Docket Entry #46]. The Court
8 rejects Defendants' argument. *8 Plaintiffs' allegations contain enough facts about the provisions of the ERISA plans to make their ERISA § 502(a)(1)(B) claims plausible, and to give United adequate notice as to which provisions they allegedly breached.

Plaintiffs allege that "[a]ll of the Plans require reimbursement of medical expenses incurred by United [s]ubscribers at usual, customary, and reasonable rates." Compl. ¶ 64. Plaintiffs allege that Defendants breached the terms of the plans by refusing to make proper out-of-network reimbursements for charges covered by the plans. *Id.* Plaintiffs further allege these breaches included "refusing to pay the usual, customary, and/or reasonable charges" for medically necessary procedures and services performed at TGH. *Id.* More specifically, Plaintiffs allege that for services provided to the 1,969 United subscribers from approximately February 11, 2012, to June 30, 2015, TGH billed United "usual, customary, and reasonable rates for the particular medical services provided at TGH[,]" and that only a fraction of the amount billed has been paid by United. *Id.* ¶¶ 40, 42. Plaintiffs further allege that payment of roughly 25% of the total billed charges falls far short of the usual, customary, and reasonable reimbursement rates required under the plans. *Id.* ¶ 52.

These allegations are sufficient to state a plausible claim for recovery of benefits under ERISA § 502(a)(1)(B). *See Grand Parkway Surgery Ctr., LLC v. Health Care Servs. Corp.*, 2015 WL 3756492, at *4 (S.D. Tex. June 16, 2015). In *Grand Parkway*, the district court declined to dismiss an out-of-network medical provider's § 502(a)(1)(B) ERISA claim, rejecting an insurance company's argument that dismissal was required because the medical provider "failed to allege the specific plan terms that confer[] the benefits in question." *Grand Parkway*, 2015 WL 3756492, at *4. In that case, the medical provider alleged
9 that the plan terms allowed *9 for reimbursement of reasonable and necessary medical expenses at usual and customary rates,

casetext

and that "[the defendant] made reimbursement at drastically reduced rates." *Id.* On these allegations, the district court concluded that the medical provider had adequately identified the "plan terms which [it] asserts confer[] the benefits it seeks to recover under § 502." *See id.*

Similarly, in *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litigation*, 865 F. Supp. 2d 1002 (C.D. Cal. 2011) ("*WellPoint I*"), plaintiffs, who were out-of-network medical providers and ERISA plan subscribers, brought an ERISA claim for recovery of benefits under § 502(a)(1)(B) against a health care insurer and its affiliates. The plaintiffs alleged that the defendants failed to reimburse subscribers for services obtained from out-of-network providers at the actual amount of the subscribers' medical bills, or at usual, customary, and reasonable rates, but instead reimbursed them at a much lesser rate. *WellPoint I*, 865 F. Supp. 2d at 1040. The defendants sought to dismiss the § 502(a)(1)(B) claim, arguing that the pleadings failed to identify a specific plan term that conferred the benefit in question. As in *Grand Parkway*, the court rejected this argument, finding that the plaintiffs had "identified specific plan terms conferring reimbursement benefits[.]" *Id.*

The *Grand Parkway* and *WellPoint I* decisions addressed nearly identical factual allegations and legal arguments to those presented in this case. This Court likewise holds that Plaintiffs have pled sufficient facts to state a plausible claim for relief under Count One.

Many of Defendants' arguments, including that they properly denied Plaintiffs' claims for reimbursement on their merits, and provided appropriate justifications for their denials, are appropriately addressed at the summary judgment stage. *See Grand Parkway*, 2015 WL 3756492, at *4 ("Whether the terms of the plans at issue in this case actually confer the benefits
10 *10 Plaintiff alleges can be raised on a motion for summary judgment."). The determination of whether Defendants have adequately complied with plan standards is necessarily a factually intensive inquiry that is inappropriate for resolution via a motion to dismiss.

6 6 In addressing whether the pleadings are sufficient to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court will not consider the provider explanation of benefit forms ("PEOBs") which Defendants have attached to their Motion to Dismiss, and upon which they rely to dispute Plaintiffs' allegations. As Plaintiffs correctly note, the PEOBs "were not attached to, referred to, cited in, or central to" the Complaint. Pls.' Resp. 10 [Docket Entry #51]. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (documents are "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claims."); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Thus, the PEOBs cannot properly be considered on a Rule 12(b)(6) motion.

2. *Exhaustion of Administrative Remedies*

Assuming Plaintiffs have sufficiently alleged a claim for benefits under ERISA § 502(a)(1)(B), Defendants further argue that the Court should dismiss Count One because Plaintiffs have failed to exhaust available administrative remedies, and failed to adequately allege it would have been futile to do so. Generally, a claimant seeking to recover plan benefits under ERISA must first exhaust available remedies under the plan before bringing suit. *See Coop Benefits Admin'rs, Inc. v. Odgen*, 367 F.3d 323, 336 (5th Cir. 2004). This rule is in place, in part, to "encourage the parties to resolve their dispute at the administrative level." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.2d 287, 300 (5th Cir. 1999). However, "[t]he Fifth Circuit has held that exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust administrative remedies

would be a patently futile course of action." *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 304 (S.D. Tex. 2011) (internal punctuation and citations omitted). An example of such an exception to the exhaustion requirement was applied a decade ago by this Court, in declining to dismiss
11 a *11 plaintiff's ERISA claims where the plaintiff alleged he requested, but was not provided, various plan documents, calculations, and correspondence necessary to pursue his administrative remedies. *See Bernstein v. Citigroup Inc.*, 2006 WL 2329385, at *2-3 (N.D. Tex. July 5, 2006) (Lynn, J.). Adopting the reasoning of the Eleventh Circuit, this Court reasoned:

> Until [the plaintiff] could obtain plan documents describing what remedies the plan made available and documenting the reasons that his claim had been denied, he was refused meaningful access to those procedures. [The plaintiff's employer] nevertheless asks us to require that [the plaintiff] exhaust those very procedures to which [the plaintiff's employer] itself denied him access. . . . When a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion.

*Id.* at *2 (quoting *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846-47 (11th Cir. 1990), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1315 (11th Cir. 2001)).

Plaintiffs do not claim to have exhausted administrative remedies as to all 1,969 claims, instead contending they are in "the process of exhausting available appeals" (Compl. ¶ 55), and that full exhaustion is excused because (1) although they followed proper administrative appeals procedures under the plans, United deprived them of meaningful access to administrative remedies; or (2) further attempts at appeal would be futile. The Court considers these contentions in turn.

First, Plaintiffs argue that exhaustion is excused because United failed to follow claims procedures consistent with ERISA § 503, and the Department of Labor's regulatory requirements in 29 C.F.R. § 2560.503-1(f) and (g)(1), by, among other things, failing to provide the following: written notice of benefit determinations within ninety days of claim submission; the specific reasons for denial or reduction of claims, including citing plan provisions, rules,
12 guidelines, and *12 protocols supporting denial; detail about appeal procedures; notification of entitlement to have information relevant to the claims provided for free; and a description of any additional material necessary to perfect an administrative claim. *See* Pls.' Resp. 14-16 (citing Compl. ¶¶ 59, 78 & Ex. A at 5-33).

7 [7] Relying upon the PEOBs submitted as part of its appendix, United argues that, contrary to Plaintiffs' pleadings, it complied with all procedural requirements under ERISA § 503. For the reasons already set forth above, *see supra* note 6, the PEOBs cannot be considered on a Rule 12(b)(6) motion. United may raise this argument at summary judgment.

Second, Plaintiffs argue that they have adequately alleged that to the extent they have not exhausted their administrative remedies in some sub-set of claims, such failure is excused by the doctrine of futility. *Id.* at 16-18 (citing Compl. ¶¶ 57-58(i), 59(ii)). In the Complaint, Plaintiffs allege that United repeatedly denied claims totaling more than $104 million, and refused to provide the information necessary for Plaintiffs to make an appropriate appeal. Compl. ¶¶ 57-58(i), 59(ii). Plaintiffs also allege that TGH has already exhausted a number of claims and, in light of United's repeated failure to offer any meaningful administrative process for challenging its denials of those claims, it is

casetext

futile for it to pursue further administrative remedies as to the remaining claims. Compl. ¶¶ 78-79.

In light of these pleaded facts, the Court concludes that Plaintiffs have sufficiently alleged that exhaustion should be excused, based on either or both reasons claimed: United's alleged failure to provide meaningful access to administrative remedies and the futility of further efforts by Plaintiffs. *See, e.g.*, *Baptist Mem'l Hospital-De Soto v. Crain Auto., Inc.*, 392 F. App'x 288, 293 (5th Cir. 2010) (affirming district court's holding that hospital was excused from exhausting administrative remedies where administrator of plan failed to comply with ERISA § 503 and Department of Labor's procedural requirements related to denial of
13 claim); *see also* *13 *Bernstein*, 2006 WL 2329385, at *2-3 (denying a motion to dismiss where plaintiff's complaint alleged that he had requested, but had not been provided, "various plan documents, calculations, and correspondence from the plan," because if he "proves such facts, he may be entitled to relief."); *N. Cypress*, 782 F. Supp. 2d at 304 ("Even if dismissal for failure to exhaust were appropriate at this stage, North Cypress has pled facts indicating that it was denied meaningful access to administrative remedies. North Cypress argues and the Court agrees that it could be excused from exhaustion on that basis.").

8 [8] The Court rejects Defendants' argument that to "sufficiently allege futility, a plaintiff must show either hostility or bias on the part of the administrator." *See* Defs.' Br. 15 (citing *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000)). In *Bourgeois*, the Fifth Circuit held that an employee's failure to exhaust administrative remedies could not be excused on grounds of futility where the employee failed to present sufficient summary judgment evidence that the internal appeals board would have rejected his appeal. *Bourgeois*, 215 F.3d at 479. As Plaintiffs correctly note, in *Bourgeois*, the Fifth Circuit "actually made no specific finding regarding hostility or bias." Pls.' Resp. 17. Although the Fifth Circuit noted that hostility or bias had been required in another case, it recognized that the court "has not decided" whether evidence of hostility or bias were required to demonstrate futility on different facts. *Id.* at 479.

Accordingly, the Court **denies** Defendants' Motion to Dismiss Count One of the Complaint.

**B. Count Two - Claim for Breach of Fiduciary Duty (ERISA § 502(a)(3))**

In Count Two of the Complaint, Plaintiffs allege Defendants breached their fiduciary duties to the plans' members. Under ERISA § 502(a)(3), "a participant, beneficiary, or fiduciary" may bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief[.]" 29 U.S.C. § 1132(a)(3). While Plaintiffs are not themselves "a participant, beneficiary, or fiduciary," Plaintiffs argue they have stepped into the shoes of beneficiaries/participants, and thus have derivative standing to assert ERISA claims for breach of fiduciary duty.

14 *14 Defendants challenge Plaintiffs' standing to bring this claim under Federal Rule of Civil Procedure 12(b)(1). Alternatively, Defendants move to dismiss Count Two under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs may not simultaneously maintain a claim for benefits under § 502(a)(1)(B) and for breach of fiduciary duty under § 502(a)(3). The Court will consider Defendants' Rule 12(b)(1) challenge first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

casetext

1. *Standing*

Defendants contend the assignments under which Plaintiffs sue are, as a matter of law, insufficient to allow the Plaintiffs to assert claims for breach of fiduciary duty. Defendants' attack on the court's jurisdiction is facial, as they do not submit evidence to support their contention. *See Crowder*, 2010 WL 2710601, at *1.

9 [9] In their reply brief, Defendants do not contest Plaintiffs' assertion that Defendants' challenge to the Court's subject matter jurisdiction under Rule 12(b)(1) is a facial attack. *See* Pls.' Resp. 5-6 [Docket Entry #51]; Reply [Docket Entry #53].

Many cases have held that a health care provider who receives an assignment from an ERISA plan beneficiary can achieve derivative standing. *See Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 333-34 (5th Cir. 2005); *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891-92 (5th Cir. 2003). However, the claim being asserted must have been expressly assigned to the party asserting it. *Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 774 (S.D. Tex. 2014) (citing *Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't*
15 *Co.*, *15 105 F.3d 210, 218 (5th Cir. 1997)). In *Texas Life*, on appeal from a grant of summary judgment, a state insurance guaranty association argued that it had obtained an assignment to sue for breach of fiduciary duty through a state statute purporting to assign such claims by operation of law. The Fifth Circuit affirmed the district court's ruling that the guaranty association did not have derivative standing to bring a claim for breach of fiduciary duty because there was no evidence the right had been "expressly and knowingly assigned." *Texas Life*, 105 F.3d at 218. Specifically, the Fifth Circuit held:

> Because an assignment of a fiduciary duty breach claim affects all plan participants, and unsuccessful claims can waste plan resources that are meant to be available for employees' retirements, these claims are not assigned by implication or by operation of law. Instead, *only an express and knowing assignment of an ERISA fiduciary claim is valid.*

*Id.* (emphasis added).

10 [10] Although *Texas Life* involved a claim for breach of fiduciary duty brought under ERISA § 502(a)(2), rather than § 503(a)(3), courts apply the same analysis under both sub-sections in considering whether a party has derivative standing to assert a breach of fiduciary duty claim. *See, e.g., Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 774 (S.D. Tex. 2014) (citing *Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997)).

Plaintiffs assert they have acquired standing pursuant to assignments of benefits executed by all of their patients, including United subscribers, upon registration at TGH. Defendants respond that even if the assignments to TGH are valid and enforceable, they do not provide Plaintiffs standing to sue for anything other than plan benefits. The assignment of benefits forms, upon which Plaintiffs rely, convey "to the hospital all right, title, and interest *in all benefits payable* for the healthcare rendered, which are provided in any and all insurance policies and health benefit plans from which [the patient] is entitled." Compl. ¶ 35 (emphasis added). The assignment forms also contain a limitation on recovery as
16 follows: "In no event will the hospital *16 and/or hospital based physicians retain benefits in excess of the amount owed to the hospital and/or hospital based physicians for the care and treatment rendered during admission." *Id.* The

assignment does not reference any ERISA breach of fiduciary duty claims or other non-benefits ERISA claims.

Numerous courts have addressed the question of whether assignments of ERISA benefits claims assign non-benefits claims. The vast majority have rejected the contention that they do. *See, e.g., Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 852 (11th Cir. 2013) (citing with approval *Texas Life*, 105 F.3d at 218-19) (holding that an assignee lacked standing to sue under § 502(a)(3) where patient "assign[ed] only the right to receive benefits and not the right to assert claims for breach of fiduciary duty"); *Mid-Town Surgical Ctr.*, 16 F. Supp. 3d at 775 (holding that an assignment that only referenced payment of "surgical and/or Medical Benefits" was "insufficient as a matter of law to assign . . . non-benefits ERISA claims."); *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 896-97 (C.D. Cal. 2012) ("*Wellpoint II*") (assignment that expressly related to the right to receive payments failed to give medical provider standing to assert non-benefits claims, including a claim for breach of fiduciary duty under ERISA); *Grand Parkway*, 2015 WL 3756492, at *3 ("Assignments that do not refer specifically to fiduciary duty or other non-benefits ERISA claims do not assign non-benefits claims to the [medical provider]."); *Romano Woods Dialysis Ctr. v. Admiral Linen Serv., Inc.*, 2014 WL 3533479, at *2 (S.D. Tex. July 15, 2014) (an assignment that authorizes "payment" of insurance benefits does not include an assignment of non-benefits ERISA claims); *Encompass Office Solutions, Inc. v. Connecticut Gen. Life Ins. Co.*, 2012 WL 3030376, at *6 (N.D. Tex. July 25, 2012) (an assignment limited to recovery of "medical benefits allowable and *17 otherwise payable" under the plan confers standing "to pursue claims for reimbursement of medical benefits but not other claims (regardless of whether the claims are characterized as fiduciary duty claims or otherwise)."). *But cf. N. Cypress*, 782 F. Supp. 2d at 303-04 (rejecting similar challenge by an insurance company and finding that express and knowing assignments are only required where assignment was by operation of law and not by an express assignment of benefits and rights).

The Court concludes that the assignments to TGH are ineffective to assign any right to pursue non-benefits ERISA claims, including claims for breach of fiduciary duty. Because Plaintiffs thus do not have standing to bring a derivative breach of fiduciary duty claim under ERISA, the Court **grants** Defendants' Motion to Dismiss Count Two of the Complaint under Federal Rule of Civil Procedure 12(b)(1), for want of subject matter jurisdiction.

2. *Failure to State a Claim*

In the alternative to dismissal for want of standing, Defendants move to dismiss Count Two under Rule 12(b)(6), arguing that Plaintiffs may not simultaneously maintain an ERISA claim for benefits under ERISA § 502(a)(1)(B) and an ERISA claim for breach of fiduciary duty under ERISA § 502(a)(3). The Court agrees.

An ERISA plaintiff may sue for breach of fiduciary duty only where there is no other available ERISA remedy. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (holding that § 502(a)(3) is a "catchall remedial section" that "[a]cts as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."). In *Tolson v. Avondale Industries, Inc.*, the Fifth Circuit, agreeing with the district court, held that because a plaintiff had adequate redress under § 502(a)(1)(B), a claim for breach *18 of fiduciary duty under § 502(a)(3) was inappropriate, even though the plaintiff did not prevail on his § 502(a)(1)(B) claim. *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998); *see also Bernstein*, 2006 WL 2329385, at *8 (dismissing § 502(a)(3) claim because lawsuit maintained a claim to recover benefits under § 502(a)(1)(B)); *Grand Parkway*, 2015 WL 3756492, at *5-6 (same); *Lopez v. Liberty Life Assurance Co. of Boston*, 2013 WL 5774878, at *3 (S.D.Tex. Oct. 24, 2013) (same). *But cf. N. Cypress*, 782 F. Supp. 2d at 309 (taking a "more expansive approach" and finding

it "premature to dismiss North Cypress' § 502(a)(3) claim solely on the basis that North Cypress has sufficiently pled a claim under § 502(a)(1)(B).").

In the alternative to its order dismissing Count Two for lack of standing, the Court **grants** Defendants' Motion to Dismiss Count Two of the Complaint in light of the Plaintiffs' assertion of claims under § 502(a)(1)(B).

**C. Count Three - Denial of Full & Fair Review in Violation of ERISA § 503**

In Count Three of the Complaint, Plaintiffs assert a claim for failure to provide a full and fair review of adverse benefits determinations, failure to disclose information relevant to appeals, and failure to comply with applicable claims procedure regulations. *See* Compl. ¶ 80. ERISA § 503 requires that every employee benefit plan:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

19 *19 Defendants argue that Count Three should be dismissed because ERISA § 503 provides no private right of action, and because a § 503 claim may only be asserted against the ERISA plan itself, and Plaintiffs fail to allege that Defendants are "the plan." Defs.' Br. 19-20 [Docket Entry #46]. For the reasons that follow, the Court rejects Defendants' arguments.

ERISA § 503 does not give rise to a private right of action for compensatory relief. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (holding that a claimant may bring a civil action to challenge the outright denial of benefits, but that the statute does not provide for compensatory or punitive relief). However, an ERISA § 503 "claim is proper where the plaintiff seeks equitable relief, such as remand to the plan administrator." *Levi v. RSM McGladrey, Inc.*, 2014 WL 4809942, at *10 n.24 (S.D.N.Y. Sept. 24, 2014) (citing *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review.")). In the Complaint, Plaintiffs are asserting a right to equitable relief from the alleged failure to provide a full and fair review. *See* Compl. ¶ 81 (seeking declaratory and injunctive relief for Defendants' alleged "failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations"). Because Plaintiffs are not seeking monetary relief in Count Three, the Court declines to dismiss Count Three on this ground.

11 [11] In support of their argument that ERISA § 503 does not support a private right of action, Defendants rely on two Fifth Circuit cases, one of which is unpublished. *See* Defs.' Br. 19 n. 78 (citing *Baptist Mem'l Hosp.-DeSoto, Inc. v. Crain Auto., Inc.*, 392 F. App'x 289, 294 (5th Cir. 2010) and *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir. 2006)). Neither case stands for the proposition asserted by Defendants. In *Baptist Memorial*, the court excused a plaintiff's failure to exhaust administrative remedies under § 503 because the defendant failed to comply with ERISA's appeal requirements. *Baptist Memorial*, 392 F. App'x at 294. The court did not address whether ERISA § 503 confers a private right of action. The court in *Robinson* similarly did not address the issue of whether ERISA § 503 confers a private

right of action. Thus, these cases do not support Defendants' argument that Count Three should be dismissed.

Second, Defendants argue that Count Three should be dismissed because an ERISA Section 503 claim may only be asserted against an ERISA plan itself, and Plaintiffs fail to allege that Defendants are "the plan." In response, Plaintiffs concede that a Section 503 claim may only be asserted against a plan, but argue that Defendants' "naked assertion cannot, at this stage, defeat [Plaintiffs'] well-pleaded allegations establishing United to be akin with the plans." Pls.' Resp. 21 [Docket Entry #51].

The Complaint alleges that: "At all relevant times, Defendants were the plan administrator, fiduciary, relevant party-in-interest, and/or the obligor for the Plans." Compl. ¶ 22. The Complaint also alleges more generally that United "[is] in the business of providing health benefit plans[.]" *Id.* ¶¶ 2, 12. Viewing these pleadings in the light most favorable to Plaintiffs, the Court concludes that the allegations are sufficiently broad to defeat Defendants' motion to dismiss. Whether, in fact, either UHC or UHIS is "the plan," can be addressed at the summary judgment stage after discovery.

Accordingly, the Court **denies** Defendants' Motion to Dismiss Count Three of the Complaint.

**D. Count Four - Breach of Contract (non-ERISA)**

In Count Four, Plaintiffs assert breach of contract claims against Defendants for alleged failure to pay claims for benefits owing under private health care plans, rather than employer-sponsored ERISA plans (the "non-ERISA plans"). Specifically, Plaintiffs assert Defendants breached the terms of the non-ERISA plans by failing to reimburse TGH for covered services at usual, customary, and reasonable rates. Plaintiffs further allege that United's insureds assigned TGH the right to receive reimbursements under the non-ERISA plans for the services provided.

21 *21 Defendants move to dismiss Count Four under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to adequately identify the contract terms that were breached. Defendants also argue that Count Four should be dismissed because Plaintiffs fail to allege any facts showing that they are in privity with Defendants, to the extent Defendants are "merely administering non-ERISA self-funded plans," and fail to state a claim against Defendant UHS, who is a third-party administrator, and therefore not a party "to any of the health plans under which [P]laintiffs are suing." Defs.' Br. 21 [Docket Entry #46]. The Court addresses these arguments in turn.

Under Texas law, to assert a claim for breach of contract, a plaintiff must allege: "the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages suffered by the plaintiff as a result of the breach." *Beauty Mfg. Solutions Corp. v. Ashland, Inc.*, 848 F. Supp. 2d 663, 667 (N.D. Tex. 2012) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)). Plaintiffs allege that the non-ERISA plans are valid and enforceable contracts that provided for reimbursement of medical expenses incurred by United subscribers at "usual, customary, and reasonable rates." Compl. ¶ 84. Plaintiffs further allege that as a result of Defendants' failure to comply with the terms of the non-ERISA plans, Plaintiffs, as assignees, have suffered damages and lost benefits, for which they are entitled to damages from Defendants, including unpaid benefits, restitution, interest, and other contractual damages they sustained. *Id.* ¶ 90. These allegations adequately identify the contract terms that Plaintiffs allege were breached by Defendants.

Defendants' remaining arguments supporting dismissal of Count Four are premised on the Court making a finding that UHS is a third-party administrator and, therefore, not a party to *22 the contracts that were allegedly breached. *See* Defs.' Br. 20-21 ("[A] mere administrator is not a party to the underlying insurance contract between an insurer and its insured.") [Docket Entry #46]. In the Complaint, Plaintiffs allege that both UHS and UHIC provide health care insurance and benefits to United subscribers pursuant to their health care plans. Compl. ¶¶ 2, 6, 12. Faced with a motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true, and view them in the light most favorable to Plaintiffs. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Thus, at this juncture, the Court assumes that both UHS and UHIC are parties to the contracts at issue, and rejects Defendants' argument to the contrary.

12 [12] In their 626-page appendix, Defendants have included copies of information posted on government websites to prove that UHS operates in Texas as a third-party administrator. While a court may take judicial notice of some matters of public record, the Court declines to make these determinations of fact at this juncture. Whether UHS is a third-party administrator may be raised on summary judgment or resolved informally by the parties. --------

Accordingly, the Court **denies** Defendants' Motion to Dismiss Count Four.

**E. Count Five - Breach of Duty of Good Faith and Fair Dealing (non-ERISA)**

Related to the breach of contract claim is Plaintiffs' state law claim that Defendants breached implied covenants of good faith and fair dealing arising from their contractual relationship with Plaintiffs. Defendants argue that Plaintiffs lack standing, and move to dismiss Count Five under Federal Rule of Civil Procedure 12(b)(1). In support, Defendants rely on the same arguments and cases they cited to support their motion to dismiss Plaintiffs' ERISA § 502(a)(3) claims for lack of standing. However, because Count Five is a state law claim, cases decided under ERISA, and those dealing with whether, and to what extent, an assignee has standing to assert claims statutorily reserved to beneficiaries and participants in ERISA plans, are inapposite.

23 *23 In *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165 (Tex.1987), the Texas Supreme Court recognized a duty on the part of insurers to deal fairly and in good faith with their insureds. "That duty emanates not from the terms of the insurance contract, but from an obligation imposed in law 'as a result of a special relationship between the parties governed or created by a contract.'" *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) (quoting *Arnold*, 725 S.W.2d at 167). "Without such a contract there would be no 'special relationship' and hence, no duty of good faith and fair dealing." *Natividad v. Alexsis*, 875 S.W.2d 695, 697 (Tex.1994) (internal quotations omitted).

Plaintiffs' claim for breach of the duty of good faith and fair dealing is inseparable from their breach of contract claim, as the duty at issue emanates from the special relationship created by the contract. Other than arguing as a matter of fact that UHS is a third-party administrator that is not a party to a contract between an insurer and an insured, Defendants did not contest Plaintiffs' standing to bring a state law breach of contract claim. For the same reasons Plaintiffs have standing to bring a breach of contract claim, Plaintiffs also have standing to bring an action for the insurers' alleged breach of the duty of good faith and fair dealing pursuant to that contractual relationship.

Defendants' remaining arguments supporting dismissal of Count Five are, again, premised on the Court making a finding that UHS is a third-party administrator and, therefore, not a party to the contracts at issue. The Court will not find that as a factual matter at this juncture.

Accordingly, the Court **denies** Defendants' Motion to Dismiss Count Five.

24 *24 **F. Counts Six (Common Law Breach of Fiduciary Duty) and Seven (Quantum Meruit)**

Although Plaintiffs asserted state law claims for common law breach of fiduciary duty (Count Six) and quantum meruit (Count Seven) in the Complaint, in response to Defendants' current motion to dismiss, Plaintiffs now concede that Counts Six and Seven "should be withdrawn." *See* Pls.' Resp. 25 n.4 [Docket Entry #51]. Accordingly, the Court will dismiss Counts Six and Seven.

**G. Count Eight - Promissory Estoppel**

Under Texas law, "[t]he elements of a promissory estoppel claim are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantive reliance by the promisee to his detriment." *Miller v.Raytheon Aircraft Co.*, 229 S.W.3d 358, 378-79 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). "Vague and indefinite statements that amount to no more than speculation about future events . . . are insufficient to support a claim for promissory estoppel." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 544 (N.D. Tex. 2009), *aff'd*, 632 F.3d 148 (5th Cir. 2010).

Defendants seek dismissal of Count Eight, arguing that Plaintiffs have failed to plead promissory estoppel with adequate detail. Specifically, Defendants contend that Plaintiffs' promissory estoppel claim relies on alleged promises that are too vague, that Plaintiffs failed to plead any detriment, and that the facts pled by Plaintiffs "refute any assertion of detrimental reliance." Defs.' Br. 24 [Docket Entry #46].

Plaintiffs allege that before rendering medical services, TGH received coverage verification and pre-certification that services to be rendered
25 were covered under the patient's *25 plan. Compl. ¶¶ 117, 118. Plaintiffs allege that TGH provided medical services to United subscribers and policyholders in reliance on the verification and pre-certification, and that without those assurances, TGH would not have provided the services. *Id.* ¶ 118. Plaintiffs allege this reliance was foreseeable since TGH otherwise had no way to learn whether United considered the subject services covered under the relevant plans. *Id.* Plaintiffs further allege that, as a result of TGH's reliance on United's representations, TGH suffered injury, including monetary damages. *Id.* ¶ 119.

Numerous courts confronted with similar allegations have found a complaint adequate to state a claim for promissory estoppel. *See, e.g.*, *Grand Parkway*, 2015 WL 3756492, at *6; *Mid-Town Surgical Ctr.*, 16 F. Supp. 3d at 775; *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, 2012 WL 762498, at *9-10 (D.N.J. Mar. 6, 2012).

Viewing all allegations in the Complaint as true, the Court concludes that Plaintiffs' allegations adequately state a promissory estoppel claim under Texas law. Plaintiffs allege a promise, foreseeability of reliance by TGH, and its reliance on United's promises, to TGH's detriment. Accordingly, the Court **denies** Defendants' Motion to Dismiss Count Eight of the Complaint.

**H. Count Nine - Temporary and Permanent Injunctive Relief**

Defendants move to dismiss Count Nine on the basis that the Court has granted their Motion to Dismiss all other claims. Given that many of Plaintiffs' claims have not been dismissed, dismissal of Count Nine is unwarranted. Accordingly, the Court **denies** Defendants' Motion to Dismiss Count Nine.

26 *26 IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [Docket Entry #45] is **GRANTED IN PART** and **DENIED IN PART.** Specifically, the Court **GRANTS** Defendants' Motion to Dismiss Count Two (Breach of Fiduciary Duty under ERISA § 502(a)(3)) with

casetext

prejudice to refiling, for lack of standing under Federal Rule of Civil Procedure 12(b)(1). The Court also **DISMISSES**, with prejudice to refiling, Counts Six (Common Law Breach of Fiduciary Duty) and Seven (Quantum Meruit), as Plaintiffs have withdrawn these claims. In all other respects, Defendants' Motion to Dismiss is **DENIED.**

**SO ORDERED.**

**June 28, 2016.**

/s/ ________

**BARBARA M. G. LYNN**

**CHIEF JUDGE**

casetext