# Exhibit A

Case 3:19-cv-00004-M Document 17-1 Filed 03/20/19 Page 2 of 12 PageID 129

2014 WL 12730499
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

Joel THOMASON, Plaintiff,
v.
METROPOLITAN LIFE INSURANCE COMPANY and Verizon Employees Benefit Committee, Defendants.

CIVIL ACTION NO. 3:14-cv-0086-P
|
Signed 08/27/2014

**Attorneys and Law Firms**

James L. Johnson, The Johnson Law Firm, Dallas, TX, for Plaintiff.

Linda G. Moore, Lauren Marie Leider, Terah Jean Moxley, Estes Okon Thorne & Carr PLLC, Dallas, TX, for Defendants.

## ORDER

JORGE A. SOLIS, UNITED STATES DISTRICT JUDGE

***1** Now before the Court is Defendants Metropolitan Life Insurance Company ("MetLife") and Verizon Employees Benefit Committee's ("VEBC") Motion to Dismiss, filed on February 14, 2014. Doc. 8. Plaintiff Joel Thomason ("Thomason") filed his Response on March 14, 2014. Docs. 14-16. Defendants then filed their Reply on April 4, 2014. Doc. 22. Thomason filed a Sur-Reply on May 19, 2014. Doc. 27. After reviewing the briefing, the evidence, and the applicable law, the Court DENIES MetLife and VEBC's Motion to Dismiss Thomason's § 1132(a)(3) claim.

### I. Background [1]

This lawsuit arises out of an alleged withholding of long-term disability ("LTD") benefits from Thomason in his pension plan administered by VEBC and MetLife. Doc. 1 at 1. Through the plan, Thomason "accomplished a direct rollover of his pension benefits into an IRA, and he has not withdrawn any amounts from his IRA." Doc. 1 at 2. Beginning on December 31, 2008, LTD benefits were payable to Thomason through his pension plan until he turned 65 years old, at which point he could begin to withdraw IRA funds. Doc. 1 at 3-4.

Thomason claims that beginning in June 2010, his LTD benefits of $1,251.96 per month were improperly withheld "because of an erroneous offset for Verizon pension benefits that [he] has not received." Doc. 1 at 2. In his summary plan, Thomason's pension benefits can be offset only if he elects to "receive" them. [2] Doc. 1 at 4. However, since Thomason has a direct rollover of his benefits into an IRA, he claims that he never actually received the LTD benefits because the funds went straight into the IRA. Doc. 1 at 8. Thomason argues that the term "receive" is ambiguous and misled him into believing that he "could accomplish a direct rollover of pension benefits into an IRA without offset from his LTD benefits." Doc. 1 at 22.

On January 10, 2014, Thomason filed his Complaint against MetLife and VEBC in federal court. Thomason has three claims for relief, all of which are under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. The first claim is for recovery, under 29 U.S.C. § 1132(a)(1)(B), of the alleged wrongfully withheld LTD benefits of $1,251.96 per month from June 2010. Doc. 1 at 22. The second claim is for the recovery, under 29 U.S.C. § 1132(a)(3), of the withheld LTD benefits as a result of the misleading summary plan. Doc. 1 at 22. The third claim is for monetary relief, under 29 U.S.C. § 1132(c), for $110 per day that VEBC failed to provide Thomason with his summary plan documents. Doc. 1 at 23. Defendants now move to dismiss the second claim. Doc. 8.

### II. Standard of Review

***2** Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule 12(b)(6) provides for the dismissal of a complaint when a movant shows that the non-movant has failed to state a claim for which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " (quoting *Twombly*, 550 U.S. at 555)). Additionally, the factual allegations of a complaint must state a plausible claim for relief. *Id.* at 679. A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the nonmoving party, not a "mere possibility of misconduct." *Id.*; *see also Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir. 1986).

The Court's focus in a 12(b)(6) determination is not whether the non-movant should prevail on the merits but rather whether the non-movant has failed to state a claim. *Twombly*, 550 U.S. at 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

### III. Defendants' Motion to Dismiss

ERISA was enacted by Congress to safeguard the millions of Americans who are a part of employee benefit plans by imposing minimum standards for these plans and providing remedies to participants. 29 U.S.C. § 1001. Under 29 U.S.C. § 1132(a)(1)(B), a plan participant has the right to bring civil action to "recover benefits due to him ... [and] to enforce his rights under the terms of [his] plan." Section 1132(a)(3) of ERISA allows a plan participant to bring civil action "to enjoin any act or practice which violates any provision" of his plan, or "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). The United States Supreme Court determined that § 1132(a)(3) is a "catchall" provision, "offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.' " *Id.* at 515. Accordingly, the United States Court of Appeals for the Fifth Circuit has interpreted this catchall provision to be exclusive. *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998). Defendants now move to dismiss Thomason's claim under 29 U.S.C. § 1132(a)(3) for recovery of the withheld LTD benefits as a result of the allegedly misleading summary plan. Doc. 8 at 2-3.

Defendants first argue that dismissal is proper because Thomason cannot plead a § 1132(a)(3) claim in the alternative to a § 1132(a)(1)(B) claim. Doc. 8 at 3-5. Thomason concedes that he cannot recover under both § 1132(a)(1) and § 1132(a)(3). Doc. 15 at 32. However, he does argue that he should be permitted to plead his § 1132(a)(3) claim in the alternative. Doc. 15 at 15. The Court agrees. While the Court recognizes that courts have disagreed whether simultaneous pleading of both § 1132(a)(1)(B) and § 1132(a)(3) is permissible, the Court "agrees with the more expansive approach taken by many courts, which allows plaintiffs to simultaneously plead claims under several subsections of [§ 1132(a)(3) ]," thereby permitting "plaintiffs time to develop their trial strategy and preserve alternative grounds for relief until a later stage in the litigation." *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 309 (S.D. Tex. 2011); *see also Verizon Emp. Benefits Comm. v. Frawley*, No. 3:05-CV-2105-P, 2006 WL 3438614, *7 (N.D. Tex. Nov. 15, 2006). Therefore, the Court declines to dismiss Thomason's § 1132(a)(3) claim on this ground.

***3** In their Reply, Defendants argue that, even if the Court permits Thomason to plead in the alternative, he has not sufficiently pleaded a § 1132(a)(3) claim because he has not pleaded that "***he*** was misled by the [summary plan descriptions], which ***caused*** him to suffer an actual harm." Doc. 22 at 3 (emphasis in original). In *CIGNA Corporation v. Amara*, the Supreme Court expanded the relief available under § 1132(a)(3) to include relief when a plaintiff sues a plan fiduciary and the relief sough makes the plaintiff whole for losses caused by the defendant's breach of a fiduciary duty. 131 S.Ct. 1866, 1878-81 (2011); *see also Geralds v. Entergy Servs., Inc.*, 709 F.3d 448, 450-51 (5th Cir. 2013). In order to obtain relief under § 1132(a)(3) in such a situation, "a plan participant or beneficiary must show that the violation injured him or her." *Amara*, 131 S.Ct. at 1881. To do so, a plaintiff need only "show harm and causation." *Id.* The Court finds that, reading the Complaint as a whole, Thomason has sufficiently pleaded his § 1132(a)(3) claim. Therefore, the Court DENIES Defendants Motion to Dismiss. [3]

### IV. Conclusion

Case 3:19-cv-00004-M Document 17-1 Filed 03/20/19 Page 4 of 12 PageID 131

For the foregoing reasons, the Court DENIES MetLife and VEBC's Motion to Dismiss Thomason's § 1132(a)(3) claim.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2014 WL 12730499

Footnotes

1 The information in this section is taken from Thomason's Original Complaint. *See* Doc. 1. On a Motion to Dismiss such as this, courts are to accept as true the allegations in the pleading. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

2 The exact wording of the summary plan: "Your LTD plan benefit is reduced by benefits provided from these sources: Pension benefits from a Verizon pension plan, if you elect to receive them." Doc. 1 at 4.

3 The Court notes that in their Motion to Dismiss, Defendants also argue that dismissal is proper because a Texas appellate court held in *Phillips v. Metropolitan Life Insurance Company*, 405 S.W.3d 880, 898-905 (Tex. App.—Dallas 2013, no pet.), that "the term 'receive,' as used in the offset provision in the 2008 [summary plan description] is not ambiguous." Doc. 8 at 6. However, the Court is not persuaded that *Phillips,* which decided that the plaintiff could not recover under § 1132(a)(1)(B) at the summary judgment stage, requires dismissal of Thomason's § 1132(a)(3) claim at the motion to dismiss stage, especially where it does not appear that Thomason's arguments are "identical" to those in *Phillips.*

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:19-cv-00004-M Document 17-1 Filed 03/20/19 Page 5 of 12 PageID 132

165 F.Supp.3d 512
United States District Court,
N.D. Texas, Dallas Division.

Joel Thomason, Plaintiff,
v.
Metropolitan Life Insurance Company and Verizon Employee Benefits Committee, Defendants.

No. 3:14–CV–0086–P
|
Signed February 25, 2016

**Synopsis**
**Background:** Participant in long-term disability plan governed by Employee Retirement Income Security Act (ERISA) brought action against employer and claim administrator, challenging offset taken against his long-term disability benefit payments due to lump sum pension payment, which was rolled into a personal individual retirement account (IRA). Participant moved for summary judgment, and defendants moved for partial summary judgment.

**Holdings:** The District Court, Jorge A. Solis, J., held that:

administrator's interpretation of summary plan description was legally incorrect;

administrator abused its discretion by interpreting summary plan description to permit offset;

fact issue precluded summary judgment in participant's favor on claim alleging administrator failed to timely furnish plan documents; and

participant was entitled to equitable relief under ERISA.

Plaintiff's motion granted in part and denied in part; defendants' motion denied.

**Attorneys and Law Firms**

***514** James L. Johnson, The Johnson Law Firm, Dallas, TX, for Plaintiff.

Linda G. Moore, Estes Okon Thorne & Carr PLLC, Dallas, TX, for Defendants.

***ORDER***

JORGE A. SOLIS, UNITED STATES DISTRICT JUDGE

Now before the Court is Plaintiff Joel Thomason's ("Thomason") Motion for Summary Judgment, filed on March 5, 2015. Doc. 58. Defendants Metropolitan Life Insurance Company ("MetLife") and Verizon Employee Benefits Committee ("VEBC") filed a response on April 10, 2015. Doc. 81. Thomason filed a reply on April 24, 2015. Doc. 87.

Also before the Court is Defendants' Motion for Partial Summary Judgment, filed on April 2, 2015. Doc. 74. Thomason filed a response on April 7, 2015. Doc. 77. Defendants filed a reply on April 21, 2015. Doc. 84.

The Court also reviews Thomason's Objections to Defendants' Summary Judgment Evidence, filed April 8, 2015. Doc. ***515** 80. Defendants filed a response on April 22, 2015. Doc. 85. Thomason filed a reply on April 30, 2015. Doc. 92.

Also before the Court is Thomason's Objections to Defendants' Additional Summary Judgment Evidence, filed on April 24, 2015. Doc. 88. Defendants filed a response on May 8, 2015. Doc. 93. Thomason filed a reply on May 14, 2015. Doc. 96.

After reviewing the parties' briefing, the evidence, and the applicable law, the Court partially GRANTS Thomason's Motion for Summary Judgment (Doc. 58) and DENIES Defendants' Motion for Partial Summary Judgment (Doc. 74). The Court also finds Thomason's objections MOOT. Docs. 80, 88.

## I. Background

This case involves a dispute as to whether an offset was properly taken against the monthly long-term disability ("LTD") benefit payments to Thomason under VEBC's Plan for Group Insurance (the "Plan"). The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended,

29 U.S.C. §§ 1001—1461 ("ERISA"). Doc. 76 at 54. Here, MetLife, as the LTD claim administrator, is vested with discretionary authority to adjudicate LTD claims and interpret the terms of the Plan. *Id.* at 48–49. The Plan is thoroughly explained through the Summary Plan Description ("SPD"). The SPD provides that certain benefits are offset from the LTD benefit amount, including "[p]ension benefits from a Verizon pension plan, if you elect to receive them." Doc. 76 at 39. Notably, however, the SPD is incorporated into the Plan by reference. Doc. 75 at 6 (citing Doc. 76 at 11).

Both parties now move for summary judgment.

**II. Motion for Summary Judgment**

Under Fed.R.Civ.P. 56(a), courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [1] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To determine whether summary judgment is proper, the courts view the record and all reasonable inferences drawn from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party has carried its initial burden, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine fact dispute. *Id.* at 586–87, 106 S.Ct. 1348. The party defending against a summary judgment motion cannot defeat the motion without providing specific facts demonstrating a genuine dispute of material fact. *Anderson,* 477 U.S. at 247–8, 106 S.Ct. 2505; *accord* ***516** Fed.R.Civ.P. 56(c). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505; *accord* Fed.R.Civ.P. 56(c). In other words, "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. Int'l Ins. Co.,* 612 F.3d 851, 857 (5th Cir.2010). Courts have no duty, furthermore, to search the record for a material disputed fact. *See id.*; *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 651 (5th Cir.2012).

**III. ERISA Summary Plan Interpretation**

This case requires the Court to interpret an ERISA *summary plan description.* Thomason and MetLife disagree over the relevant standards of interpretation. The Plan, which incorporates the SPD, states that certain benefits are offset from the LTD benefit amount, including "[p]ension benefits from a Verizon pension plan, if you elect to *receive* them." Doc. 76 at 39 (emphasis added).

Thomason contends that he did not "receive" the pension benefits because he rolled his lumpsum pension payment into a personal individual retirement account ("IRA"). Doc. 78 at 3. Defendants disagree, contending that the money was received when MetLife delivered the lumpsum payment. Doc. 75 at 8–10. In other words, the bulk of this dispute is over the definition of the word "receive" and what standard of interpretation the Court should use to interpret it.

How to interpret an ERISA *plan* by itself is not in dispute. Benefit determinations under an ERISA plan are governed in the first instance by the plan language. *Gosselink v. AT & T, Inc.,* 272 F.3d 722, 726 (5th Cir.2001). Courts in the Fifth Circuit use a two-step review process in determining whether a benefit decision involving the interpretation of a plan is an abuse of discretion. *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 637–38 (5th Cir.1992). Under the two-step process, a court must first determine the legally correct interpretation of the applicable plan provisions. *Id.* at 638. If the administrator's interpretation of the plan is legally correct, the inquiry ends because no abuse of discretion could have occurred. *See Ellis v. Liberty Life Assurance Co. of Boston,* 394 F.3d 262, 270 (5th Cir.2004). In answering this question, a court must consider: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Id.* If a court applies these factors and concludes that an administrator's interpretation of a plan was legally incorrect, "three additional factors become relevant" to determine whether

the administrator abused his discretion. *Wildbur,* 974 F.2d at 638. These factors are "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Id.*

Defendants' apply this two-step review and factor analysis in their briefing and conclude that MetLife's conclusion was legally correct and not an abuse of discretion. *See* Doc. 82 at 2–3, 11–3; 75 at 13–20. Thomason argues that different factors apply and that, under the correct factors, the administrator's conclusion was legally incorrect and an abuse of discretion.

### A. Legally Incorrect Interpretation

In applying the first step, Defendants argue that the administrator's conclusion ***517** was legally correct because Metlife gave the Plan a uniform construction, its interpretation was consistent with a fair reading of the plan, and Thomason's interpretation of the Plan would impose unanticipated costs on VEBC. Doc. 75 at 13–20.

Thomason contends that the dispute is not simply over how to interpret an ERISA plan, but over how to interpret an ERISA *summary plan description,* for which the Fifth Circuit uses a different standard. Doc. 59 at 6–9. Citing *Rhorer v. Raytheon Engineers and Constructors,* Thomason asserts that "[t]he first step is ordinarily comprised of three factors, but they are *not considered at all* when the question involves the interpretation of a summary plan description, rather than of a plan document." *Id.* at 11 (citing 181 F.3d 634, 640 n. 7 (5th Cir.1999)).

In *Rhorer,* the Fifth Circuit held that the three factors generally used to interpret whether a plan administrator's interpretation is legally correct—the first step of the two-step review process—were not particularly helpful to its analysis. 181 F.3d 634 at 640 n. 7. It stated that in such instances the court "will use more particularized standards." *Id.* In explaining the standard for summary plan descriptions, the court cited to past case law and the ERISA statute:

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries ... The summary plan description shall ... be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

*Id.* (citing *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 980 (5th Cir.1991) (quoting 29 U.S.C. § 1022(a))). The court also concluded that a summary plan description interpretation includes "the rule of *contra proferentem* [ ] that ambiguities in contracts are to be resolved against the drafter." *Id.* at 640–41 (citing *Hansen,* 940 F.2d at 982).

Defendants argue that the rule of *contra proferentum* does not apply. Doc. 82 at 5–6. They assert that because the summary plan is expressly incorporated into the plan by reference "the distinction that [Thomason] attempts to create between interpreting the terms of the Plan and interpreting the [summary plan] is unsound." *Id.* at 5. Thomason responds that incorporating the terms of the summary plan description into the plan does not change how the summary plan description is interpreted. *See* Doc. 87 at 5.

This Court agrees with Thomason. The Fifth Circuit in *Koehler v. Aetna Health* specifically held that using identical language in both plan and plan summary description does not cloak the terms of a summary plan description within an administrator's interpretive discretion. 683 F.3d 182, 188–89 (5th Cir.2012) (citing *Hansen,* 940 F.2d at 981; *Rhorer,* 181 F.3d at 641). "Aetna's discretion to resolve ambiguities in the *plan* does not extend to the plan *summary,* notwithstanding that in this instance the summary is a verbatim copy of text in the plan." *Id.* at 188.

Defendants next attempt to escape the summary plan interpretation standard by criticizing Thomason's reliance on the Ninth Circuit decision in *Blankenship v. Liberty Life*

*Assurance Company of Boston,* 486 F.3d 620, 625–27 (9th Cir.2007). Doc. 75 at 16. Defendants cite *Day v. AT & T Disability Income Plan,* 698 F.3d 1091, 1098 (9th Cir.2012) in which the Ninth Circuit later limited application of the rule of *contra proferentem* to cases in ***518** which the administrator does not have discretion to interpret the plan. Doc. 75 at 17. The Fifth Circuit has not. *See Rhorer,* 181 F.3d at 642. The Court thus holds that it is bound by *Koehler* and its line of cases to apply the more exacting summary plan interpretation standard.

Finally, Defendants argue that *contra proferentum* does not apply because no ambiguity exists. Doc. 82 at 5–6. In support, they cite a Dallas Court of Appeals case which, under somewhat similar facts, held that there was no ambiguity to construe against the drafters. *Id.* (citing *Phillips v. Metro. Life Ins. Co.,* 405 S.W.3d 880, 901 (Tex.App.–Dallas 2013)). Thomason disagrees and argues that the document language includes "conflicting inferences." Doc. 59 at 14. Furthermore, Thomason argues that *Phillips* was wrongly decided. Doc. 59 at 27.

The Court understands that for *contra proferentem* to apply, even under the summary plan description standard required by the above case law, there must be some ambiguity. A plaintiff challenging a plan summary description does not merit the doctrine of *contra proferentem* simply by asserting that the definition of "is" is ambiguous. In *Rhorer,* the Fifth Circuit held that when "a reasonable plan participant could not read the summary plan description and know with any degree of certainty[,]" the summary plan description was ambiguous. 181 F.3d at 642.

The facts of *Rhorer* are the most analogous to the current case. A plan administrator denied a widow's claim "on the ground that her deceased husband had not satisfied a requirement in the policy that required [him] to be actively at work on a full time basis." 181 F.3d at 637. The widow contended that the summary plan description failed to adequately disclose this requirement. *Id.* at 638. The court agreed, holding that a conflicting inference arose because the general information section of the summary plan suggested that an active work requirement may apply to all benefits under the plan but that selective uses of the active work requirement in individual sections strongly implied the opposite. *Id.* at 642. The Court thus applied *contra proferentem. Id.* at 642.

In this case, the summary plan states that certain benefits are offset from the LTD benefit amount, including "[p]ension benefits from a Verizon pension plan, if you elect to receive them." Doc. 76 at 39. Thomason asserts that this means actually receive, rather than a trustee-to-trustee transfer into an IRA. Doc. 59 at 17. Defendants argue that a plan participant "receives" the pension benefit whether it is taken as cash or rolled over to an IRA. Doc. 75 at 15.

According to dictionaries, " 'receive' means to 'be given, presented with or paid (something).' Similarly, the word means 'to take possession or delivery of'; it implies that 'something comes or is allowed to come' into one's possession. *Phillips v. Metro. Life Ins. Co.,* 405 S.W.3d 880, 901 (Tex.App.–Dallas 2013) (quoting The New Oxford American Dictionary 1421 (2001); Webster's Third New International Dictionary of the English Language Unabridged 1894 (1981)).

Looking at the word's context, the summary plan makes an express reference to the Verizon pension plan. Doc. 76 at 39. And the Verizon pension summary plan description, in turn, references Thomason's right to "request a direct rollover of [his] distribution to a traditional IRA" subject to certain "tax rules." Doc. 61 at 36. In addition, according to IRS Publication 575, a party receives the amount rolled over for tax purposes only if it is distributed from an IRA without rolling over that distribution. IRS, Dep't of the Treasury, Publication ***519** 575, Pension and Annuity Income 27 (2014).

In *Blankenship* the Ninth Circuit, under similar facts, held that "receive" was ambiguous. 486 F.3d at 624–25. As here, the dispute arose from a direct rollover of retirement benefits into an IRA and the offset of the retirement benefits from LTD benefits. *Id.* at 622–23. The governing language of the LTD plan required that "other income benefits" be deducted from the LTD benefit if the insured " 'receives under the employer's retirement plan as follows: (a) any disability benefits; (b) any retirement benefits.' " *Id.* at 623. The plaintiff argued for a definition of receipt based on possession. *Id.* at 624–25. The insurer argued for a definition based on control. *Id.* at 625. The court concluded that "receives" was therefore ambiguous. *Id.* In doing so, the court also pointed to the Internal Revenue Code, basing its determination on the IRA's status as a trustee and that the funds were transferred through a trustee-to-trustee transfer. *Id.* (citing 26 U.S.C. §§ 401(a)

(31)(A), 402(e)(6), 408(a)). Even though the Ninth Circuit has limited the rule of *contra proferentem* to cases in which the administrator does not have discretion to interpret the plan, the Court in *Blankenship* applied the relevant standard of interpretation under Fifth Circuit case law.

The Court recognizes that this holding conflicts with *Phillips,* 405 S.W.3d at 901. It is not clear to the Court whether the *Phillips* Court used the more particularized standard required by law. *See id.* at 898–99. But whether it did or not, the Court disagrees with the *Phillips* Court's conclusion that the word "receive," as used in this summary plan, is unambiguous. The *Phillips* Court came to its conclusion by pointing to the Verizon pension plan: "[T]he pension SPD and special tax rules repeatedly refer to the lump-sum distribution from the Verizon pension plan as 'payment' received by the participant." *Id.* at 902. As support, *Phillips* cites to two sections of the SPD for the Verizon Management pension plan. *Id.* That SPD states that "[y]ou can receive your benefit as a single lump-sum." Doc. 76 at 408. It later states that "[w]ith a lump-sum payment, you receive payment of your entire accrued benefit in a single payment." *Id.* at 433. Although this language shows, albeit in a separate SPD document, that Thomason could have received the benefit as a lump sum, it sheds little light on the issue at hand—whether rolling over the benefits into an IRA is considered receiving them.

The *Phillips* Court next points to language from IRS Publication 575, the same document pointed to by Thomason as proof that "receives" means to actually receive. The *Phillips* Court, however, cited to different language, stating that "[y]ou generally must complete the rollover of an eligible rollover distribution paid to you by the 60th day following the day on which you receive the distribution from your employer's plan." *Id.* at 112. This shows that rolling over benefits into an IRA can follow the reception of distributions. But just because one can receive a distribution and then also later complete a rollover does not mean that all rollovers include the reception of a distribution. *Id.* (*compare* the "No tax withheld" paragraph *with* the "Payment to you option" paragraph). A party electing a direct rollover apparently need not actually receive anything. *Id.* at 112. Therefore, the Court remains convinced that a reasonable plan participant could not read the summary plan description and know with any degree of certainty what "receive" means.

For these reasons, the Court finds that both of the requested interpretations are reasonable so that a conflicting inference ***520** exists, justifying the application of *contra proferentem.* Applying *contra proferentem,* the Court construes the term "receives" to mean possession through actual receipt of funds, rather than through a trustee-to-trustee transfer under the tax code. The Court therefore concludes that the administrator's interpretation is incorrect and grants Thomason's motion for summary judgment as to this issue.

### B. Abuse of Discretion

Thomason and Defendants also ask for summary judgment over the second step in the two-step analysis. Docs. 59 at 12; 75 at 20. Now that the Court has concluded that the administrator's interpretation was legally incorrect, it must apply the three additional factors to determine whether the administrator abused his discretion. *Wildbur,* 974 F.2d at 638. As mentioned above, these factors are "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Id.*

Yet again, the parties disagree over which factors are required when the question involves the interpretation of a summary plan description. Docs. 59 at 12; 75 at 20, 82 at 11–12. Thomason asserts that the second step ordinarily involves the above three factors but that the "first factor of the second step is *not utilized* when the question involves the interpretation of the summary plan description." Doc. 59 at 12 (citing *Rhorer,* 181 F.3d at 643). Defendants disagree, pointing to different case law. Docs. 75 at 11, 82 at 7 (citing *Dudley v. Sedgwick Claims Mgmt. Servs.,* 495 Fed.Appx. 470, 474 n. 10 (5th Cir.2012)).

The answer to this disagreement is unclear. In *Rhorer,* the Fifth Circuit held that, when the "abuse of discretion inquiry ... is directed at [the plan administrator's] interpretation of the *summary plan description,* not its interpretation of the plan itself," the "first factor does not aid in our analysis." 181 F.3d at 643. But since *Rhorer* was decided, the Supreme Court held that "the text of § 1132(a)(1)(B) does not authorize courts to enforce

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

the terms of a plan summary, because that provision only authorizes enforcement of the 'terms of the plan.' " *Koehler,* 683 F.3d 182 at 189 (citing *CIGNA Corp. v. Amara,* 563 U.S. 421, 131 S.Ct. 1866, 1877, 179 L.Ed.2d 843 (2011)). In an unpublished opinion, the Fifth Circuit concluded that since *Amara,* the first factor is again relevant because plaintiffs in these circumstances are arguing over enforcement of the actual plans, not the summary plan descriptions. *See Dudley,* 495 Fed.Appx. at 470 n. 10. The Court recognizes that this opinion is not precedent. *See* 5th Cir. R. 47.5. But out of an abundance of caution, it will look to all of the above factors. [2]

First, Defendants argue that MetLife's interpretation is consistent with the Plan language because "[t]he pension offset provision is in the section of the [summary plan description] entitled 'How your long-term disability (LTD) benefit is determined' and 'Other sources of disability income.' " Doc. 82 at 11. They also contend that "there is no internal inconsistency within the Plan under Metlife's interpretation because this is the sole provision in the Plan referring to the pension offset." *Id.* at 12. Thomason asserts that the first ***521** factor does not apply; therefore, he makes no arguments about it. *See* Doc. 59 at 12. Because the Court finds no overt inconsistency, and because it has already concluded that Defendants' interpretation was reasonable, the Court concludes that this factor favors Defendants.

Second, Defendants assert that there is no violation of the applicable regulations. Doc. 82 at 12. In support of this position, the Defendants again cite to *Phillips.* Doc. 59 at 12 (citing *Phillips,* 405 S.W.3d at 902–03). But the part of *Phillips* they cite to involves application of the first-step analysis. *Id.* In response, Thomason also points the Court to its arguments about the first-step analysis—specifically —to the regulations cited in *Rhorer* that a summary plan description must "include 'a statement clearly identifying circumstances which may result in ... loss, forfeiture or suspension of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits.' " Doc. 59 at 7 (citing 29 C.F.R. § 2520.102–3(1)). In addition, he states that "[t]he summary plan description 'must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries.' " *Id.* (citing C.F.R. § 2520.102–2(b)). The Court finds that MetLife's interpretation does not satisfy these regulations—the summary plan description does not clearly identify such circumstances and it has the effect of misleading. This factor, therefore, is in favor of Thomason.

Third, Defendants argue that there is no evidence of bad faith because "VEBC's failure to provide pension plan documents was an unintentional mistake on the part of a new vendor." Doc. 82 at 12. They further argue that the administrative record shows that MetLife provided Thomason with "a full and fair review of his objections." *Id.* Thomason disagrees. He argues that there are sufficient facts to infer a lack of good faith because VEBC "feigned ignorance of the internal revenue code," failed to provide the pension plan document and trust agreement (especially in light of the fact that there was no delay in providing documents that did not support Thomason's tax code argument), violated the regulations, and relied on an affidavit of a witness with no personal knowledge. Doc. 59 at 20–24. The Court recognizes that Defendants respond to Thomason's allegations with factual assertions that the delay in providing the pension plan document was unintentional, that they never feigned ignorance of the tax code, and that the witness's affidavit is proper. Doc. 82 at 12–20.

However, Defendants' failure to provide the pension and trust documents after providing other generic documents, selective interpretation of the pension plan documents, and violation of the applicable regulations, including its decision to collapse the SPD into the Plan by reference, taken together, raise an inference of bad faith. Defendants never deny that they delayed sending the most relevant documents; they merely give explanations for their claimed mistake. Without making further determinations of fact, the Court cannot know for certain whether Defendants acted in bad faith. But Defendants' above-listed failures do provide the Court with sufficient evidence to make a reasonable inference of bad faith. The Court thus finds that this factor also favors Thomason.

Because two of the three abuse-of-discretion factors fall in favor of Thomason, the Court concludes that Defendants abused their discretion and grants Thomason's motion for summary judgment as to ***522** the abuse-of-discretion prong. The Court thus determines that Defendants violated 29 U.S.C. § 1132(a)(1)(B). [3]

### IV. Penalties under 29 U.S.C. § 1132(c)

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

Thomason also asserts a claim under 29 U.S.C. § 1132(c), arguing that VEBC's failure to provide the pension-plan document and the trust agreement in response to his requests was a violation of 29 U.S.C. § 1024(b)(4). Doc. 59 at 3. He asks that the Court grant summary judgment in his favor. *Id.* In support of his motion, Thomason states that VEBC did not provide certain documents for more than 170 days after the legally required deadline. *Id.* at 31. Thomason also contends that VEBC acted in bad faith because it failed to provide the documents that most directly pertained to Thomason's argument about the tax rules but provided the generic Administrative Services Agreement to Thomason without difficulty. *Id.* This argument mimics Thomason's arguments in support of the final abuse of discretion factor. *See supra* Part III.B.

Defendants respond by pointing to evidence that any delay "was the result of an unintentional administrative mistake—not any intentional disregard of counsel's letters or bad faith on behalf of the VEBC." Doc. 82 at 14. Defendants also assert that Thomason "does not allege, argue or submit any evidence that he was prejudiced by the delay." *Id.* at 16.

Pursuant to the express terms of § 1132(c), the imposition of any statutory penalty for an administrator's alleged failure to timely furnish plan documents requested by a participant is within the discretion of the district court. *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf Inc.,* 637 F.2d 357, 362 (5th Cir.1981). In making this determination, courts consider (1) bad faith by the administrator, (2) the length of delay, (3) the number of requests, (4) the documents withheld, and (5) the existence of any prejudice to the plan participant. *See Romero v. SmithKline Beecham,* 309 F.3d 113, 120 (3d Cir.2002); *Friz v. ADS Power Res., Inc.,* No. 3:00–CV–1116–D, 2001 WL 732197, at *4 (N.D.Tex. June 27, 2001) (citing *Hamilton v. Mecca, Inc.,* 930 F.Supp. 1540, 1556 (S.D.Ga.1996)).

Although the Court granted summary judgment as to Thomason's 1132(a)(1)(B) claim, the Court here agrees with Defendants that Thomason does not allege, argue or submit any evidence that he was prejudiced by the delay. Because the Fifth Circuit seems to require some prejudice, the Court denies Thomason's motion for summary judgment as to its claim under 29 U.S.C. § 1132(c). *Bannistor v. Ullman,* 287 F.3d 394, 407 (5th Cir.2002) (citing *Godwin v. Sun Life Assurance Co. of Canada,* 980 F.2d 323, 327 (5th Cir.1992)).

***523 V. Equitable Relief Under 29 U.S.C. § 1132(a)(3)**

Thomason also brings a claim under 29 U.S.C. § 1132(a)(3). Doc. 1 at 3. This claim is based on Thomason's assertion that the pension offset provision in the summary plan description is in violation of 29 U.S.C. § 1022(a) because it is not written in a manner calculated to be understood by the average plan participant and sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the Plan. *Id.* at 19.

Defendants ask the Court to grant summary judgment in their favor against this claim. Doc. 75 at 22. They first argue that the summary plan description does not violate 29 U.S.C. § 1022(a). This argument boils down to Defendants assertion that the pension offset provision was not ambiguous. *See* Docs. 75 at 22, 84 at 16. Based on arguments and conclusions made above, the Court disagrees. *See supra* Part III.A.

Defendants next argue that Thomason did not suffer harm. Doc. 75 at 22. Thomason responds by asserting that "if the summary plan descriptions had clearly revealed that a direct rollover to an IRA would count as an offset from his LTD benefits, Thomason would have deferred payment of his pension benefits until he reached the age of 65 years, thereby avoiding the offset." Doc. 78 at 21. In support of their contention of no harm, Defendants assert that Thomason cannot prove harm because he was represented by the same counsel who represented the plaintiff in *Phillips.* Doc.75 at 23. The Court sees no legal support for this argument.

For these reasons, the Court denies this portion of Defendants' motion for summary judgment. Furthermore, although Thomason did not specifically move for summary judgment on this claim, the Court grants summary judgment in Thomason's favor as to 29 U.S.C. § 1132(a)(3). The Court comes to this conclusion because Thomason has already shown as a matter of law that he is entitled to summary judgment under § 1132(a)(1)(B), which requires a more extensive burden of production. In addition, "a district court may grant summary judgment against a movant even if the nonmovant has not filed a cross-motion." *U.S. Cellular Corp. v. City of Wichita Falls, Tex.,* 364 F.3d 250, 255 n. 6 (5th Cir.2004); *see also, General Universal Sys. v. Lee,* 379 F.3d 131, 145 (5th Cir.2004). Because the above

Case 3:19-cv-00004-M Document 17-1 Filed 03/20/19 Page 12 of 12 PageID 139

issues overlap, the Court concludes that the relevant circumstances have been sufficiently presented for its grant of summary to the nonmovant to be proper.

### VI. Objections

Because the Court did not rely on the evidence that Thomason asserts should be excludable, the Court finds his motions moot as they relate to this order. Docs. 80, 88.

### VII. Conclusion

For the foregoing reasons, the Court partially GRANTS and partially DENIES Thomason's Motion for Summary Judgment. Doc. 58. The Court DENIES Defendants' Motion for Partial Summary Judgment. Doc. 74.

The Court finds Thomason's Objections to Defendants' Summary Judgment Evidence (Doc. 80) and Objections to Defendants' Additional Summary Judgment Evidence (Doc. 88) MOOT.

**IT IS SO ORDERED.**

### All Citations

165 F.Supp.3d 512

## Footnotes

1 This subdivision "carries forward the summary judgment standard expressed in former subdivision (c)," with only one non-substantive change—replacing "issue" with "dispute." Fed.R.Civ.P. 56 advisory committee notes (2010 amend.). Despite the 2010 amendments, the summary judgment standard "remains unchanged." *Id.*

2 The Court also recognizes that some might conclude that *Amara* eliminated the "more particularized" review of whether a claim administrator's interpretation of a summary plan description is legally correct. However, *Koehler* was decided after *Amara* and specifically rejected such a conclusion. 683 F.3d at 189–90.

3 The Supreme Court in *Amara* held that, depending on the remedy sought, a plaintiff cannot pursue a claim to "litigate the interpretation of an SPD under § 1132(a)(1)(B)." *Dudley.,* 495 Fed.Appx. at 474 n. 10. But the relief that Thomason seeks is for Defendants to pay him "wrongfully withheld" benefits. Doc. 1 at ¶ 61. And the Fifth Circuit in *Koehler* makes clear that *Amara* does not bar a suit to enforce a plan. *See Koehler v. Aetna Health Inc.,* 683 F.3d 182, 188–89 Order (5th Cir.2012). In this case, the SPD is incorporated into the plan by reference; thus Thomason's arguments regarding the proper interpretation of the SPD are merely part of his action to enforce the plan. Doc. 76 at 11. Unlike in *Amara,* Thomason does not ask the Court to rewrite the terms of his plan. Furthermore, even if § 1132(a)(1)(B) does not provide the remedy Thomason seeks, the Court comes to the same conclusion under § 1132(a)(3), which unequivocally does provide such a remedy. *See infra* Part V; *Amara,* 131 S.Ct. at 1878–82.

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.