# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **TEXAS GENERAL HOSPITAL, LP,<br>AND TEXAS GENERAL GP, L.L.C.,**<br><br>**Texas General,**<br><br>**v.**<br><br>**UNITED HEALTHCARE SERVICES, INC.,<br>AND UNITEDHEALTHCARE<br>INSURANCE COMPANY,**<br><br>**United.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No.: 3:15-cv-02096-M** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO <u>DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

**K&L GATES, LLP**

Beth Bivans Petronio
Thomas K. Schroeter
Edward L. Vishnevetsky
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500 Telephone
(214) 939-5849 Facsimile

Anthony P. La Rocco
George P. Barbatsuly, Esq.
One Newark Center, 10th Floor
Newark, New Jersey 07102
(973) 848-4104 Telephone
(973) 556-1584 Facsimile

***Attorneys for Texas General Texas General Hospital, LP, and Texas General GP, L.L.C.***

**TABLE OF CONTENTS**

**Page**

I. SUMMARY OF ARGUMENT .......... 1

II. TEXAS GENERAL'S ALLEGATIONS .......... 2

III. APPLICABLE LEGAL STANDARDS .......... 4

A. Legal Standard in Determining 12(b)(6) Motions .......... 4

B. Legal Standard in Determining 12(b)(1) Motions .......... 5

IV. ARGUMENTS AND AUTHORITIES .......... 6

A. Texas General's Well-Pleaded Allegations Establish that United Has Withheld ERISA Plan Benefits. .......... 6

1. Texas General Properly Pleads United's Withholding of Plan Benefits. .......... 7

2. Texas General's Well-Pleaded Allegations Are Sufficient to Establish That United Improperly Denied Numerous Claims. .......... 10

B. Texas General Has Adequately Pled Exhaustion of Administrative Remedies Necessary to Plead Its ERISA Claims or, Alternatively, That It Is Excused From Exhausting Such Remedies. .......... 11

1. Texas General Properly Pleads Exhaustion of Administrative Remedies. .......... 12

2. Under the Plain Language of ERISA Section 503, Texas General's Administrative Remedies are Deemed Exhausted as a Result of United's Insufficient and Inappropriately Administered Appeals Process. .......... 14

3. To the Extent that Texas General Has Not Yet Exhausted Their Administrative Remedies in Some Sub-Set of Claims, Such Failure is Excused by Futility. .......... 16

C. Texas General's Claim for ERISA Breach of Fiduciary Duty Is Sufficiently Pled. .......... 18

D. Texas General's Claims Under ERISA Section 503 Are Proper .......... 19

E. Texas General Properly Pleads Breach of Contract Claims Against United. .......... 21

F. Texas General Properly Pleads Claims for Breach of the Duty of Good

Faith and Fair Dealing .......... 22

G. Texas General Has Properly Pleaded Promissory Estoppel Claims Against United .......... 23

H. No Basis Exists for Dismissing Texas General's Requests for Injunctive and Declaratory Relief .......... 25

V. CONCLUSION AND PRAYER .......... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
362 F. Supp. 2d 744 (N.D. Tex. 2005) ....22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4, 5, 8

*Baptist Mem'l Hosp.—DeSoto, Inc. v. Craig Auto., Inc.*,
392 F. App'x 289 (5th Cir. 2010) ....15, 19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....4, 5, 8

*Bernstein v. Citigroup, Inc.*,
2006 WL 2329385 (N.D. Tex. July 5, 2006) (mem. op.) ....16

*Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*,
215 F.3d 475 (5th Cir. 2000) ....17

*Bowen v. City of New York*,
476 U.S. 467 (1986)....14

*Castro v. U.S.*,
560 F.3d 381 (5th Cir. 2009), *rev'd en banc on other grounds*, 608 F.3d 266
(5th Cir. 2010)....6

*Dozier v. Sun Life Assur. Co. of Canada*,
466 F.3d 532 (6th Cir. 2006) ....18

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
614 F. App'x 731 (5th Cir. 2015) ....24

*Gines v. D.R. Horton, Inc.*,
699 F.3d 812 (5th Cir. 2012) ....7, 10, 16

*Grand Parkway Surgery Ctr., LLC v. Health Care Service Corp.*,
Civil Action No. H-15-0297, 2015 WL 3756492 (S.D. Tex. June 16, 2015)....8, 9

*Lane v. Halliburton*,
529 F.3d 548 (5th Cir. 2008) ....5

*Martin-Jansin v. JP Morgan Chase Bank, N.A.*,
536 F. App'x 394 (5th Cir. 2013) ....5

*Menchaca v. Chrysler Credit Corp.*,
613 F. 2d 507 (5th Cir. 1980) ....................6

*N. Cypress Med. Ctr. Op. Co. v. CIGNA Healthcare*,
782 F. Supp. 2d 294 (S.D. Tex. 2011) ....................9, 11, 16, 17, 19

*N.Y. State Psychiatric Ass'n, Inc. v. United Health Group*,
798 F.3d 125 (2nd Cir. 2015)....................20

*Robinson v. Aetna Life Ins. Co.*,
443 F.3d 389 (5th Cir. 2006) ....................19, 20

*Scanlan v. Tex. A&M Univ.*,
343 F.3d 533 (5th Cir. 2003) ....................7, 10, 16

*Taylor v. Prudential Ins. Co. of Am.*,
954 F. Supp. 2d 476 (S.D Miss. 2013)....................16, 18

*Tex. Life, Accident Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*,
105 F.3d 210 (5th Cir. 1997) ....................18

*Tolson v. Avondale Industries, Inc.*,
141 F. 3d 604 (5th Cir. 1998) ....................19

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011) ....................5

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1989) ....................6

**Statutes**

29 U.S.C. § 1133....................14, 20

42 U.S.C. § 405(g) ....................14

ERISA § 502 .................... *passim*

ERISA § 503 .................... *passim*

**Other Authorities**

29 CFR § 2650.503-1....................14, 15

Fed. R. Civ. Proc. 12(b) .................... *passim*

Texas General Texas General Hospital, LP, and Texas General GP, L.L.C. (collectively, "Texas General") file this Response in Opposition to United's Motion to Dismiss Texas General's Second Amended Complaint. Texas General respectfully requests that the Motion to Dismiss (Dkt. No. 45) filed by United United Healthcare Services, Inc. ("UHS") and UnitedHealthcare Insurance Company ("UHIC") (collectively, "United") be denied.

## I. SUMMARY OF ARGUMENT

Texas General operates a hospital in Grand Prairie, Texas that provides healthcare to patients insured by United. Because Texas General is an "out-of-network" hospital, there is no contractually set rate of reimbursement for Texas General's services. Instead, Texas General charges rates that are usual, customary and reasonable in the industry for its services and bills United accordingly. Since Texas General opened in February 2012, United has consistently and dramatically underpaid for Texas General's services to patients insured by United. Indeed, United has failed to pay as much as 75% of Texas General's charges for services rendered. Worse, United's pattern of nonpayment reflects no consistency or rationality and is typically not accompanied by any meaningful explanation. As a result, Texas General filed this suit to recover over $104 million that United still owes in connection with 1,969 healthcare claims.

United has moved to dismiss Texas General's Second Amended Complaint (Dkt. No. 38; the "SAC") under Federal Rules of Civil Procedure 12(b)(6) and, to a lesser extent, 12(b)(1). Essentially, United asks the Court to disregard the well-pleaded allegations and, instead, make factual findings to the contrary. For example, Texas General has pled that the healthcare plans at issue require reimbursement of the usual, customary and reasonable charges and that Texas General's charges were just that. United claims the opposite is true. In doing so, United repeatedly (and improperly at this stage) refers the Court to a 626-page appendix of documents,

Case 3:15-cv-02096-M Document 51 Filed 12/18/15 Page 7 of 32 PageID 1229

none of which were attached to, referenced in, or central to the SAC. The appendix includes hundreds of pages of documents related to select claims cherry-picked by United, including plan documents, explanation of benefits forms, and correspondence from United. United has also submitted a declaration purporting to explain the meaning of these documents. United asks the Court to interpret these documents in their favor and to make factual findings regarding Texas General's SAC allegations. United then asks that the Court extrapolate these claim-specific factual findings to all 1,969 of Texas General's claims. Of course, at the motion to dismiss stage, the well-pleaded allegations must be taken as true and the type of factual determinations that United seeks, which are central to the ultimate issues in this case, are not appropriate at this stage. Indeed, the mere suggestion that the Court should make a factual determination about whether the charges were usual, customary and reasonable for 1,969 separate claims at this stage of the litigation and on the basis of the 626 pages of documents and one declaration is absurd.

Indeed, as demonstrated below, Texas General has properly pleaded claims for breach of healthcare insurance plan provisions in violation of section 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA"), violations of the fiduciary duties of loyalty and due care owed under ERISA, breach of contract, breach of the duty of good faith and fair dealing, and promissory estoppel. Additionally, United's argument that ERISA section 503 does not bestow an independent cause of action is unsupported and false and, further, Texas General may properly plead a cause of action under ERISA section 503 as an alternative to its cause of action under ERISA section 502(a)(1)(B).

## II. TEXAS GENERAL'S ALLEGATIONS

Since February 2012, Texas General has operated and managed a licensed general acute care hospital in Grand Prairie, Texas, doing business as Texas General Hospital ("TGH"). (SAC

¶¶ 9, 18.) TGH operates as a for-profit hospital. (*Id.* ¶ 19.) As such, it is not eligible for tax exempt status as a charitable organization and it receives no federal or state subsidies. (*Id.*) TGH is required by law to provide emergency care to all patients regardless of the patient's ability to pay. (*Id.* ¶ 23.) Approximately 25% of TGH's patients are insured by commercial insurance; the remaining 75% are either uninsured or covered by Medicare or Medicaid. (*Id.* ¶ 22.)

United provides health care insurance, administration, and benefits to insureds or plan participants pursuant to a variety of health care benefit plans and policies of insurance. (*Id.* ¶¶ 2, 12.) TGH is considered an "out-of-network" provider with respect to United, meaning that TGH does not have a written agreement with United that sets agreed-upon rates of reimbursement for services TGH renders for United's insureds. (*Id.* ¶ 25.) In many cases, United charges its insureds higher premiums for the inclusion of "out-of-network" benefits in their plans and requires its insureds to pay higher co-payment amounts for treatment by out-of-network providers. (*Id.* ¶¶ 32–33.) Nevertheless, patients often pay the higher premiums and co-payments to ensure that they obtain necessary medical services from the medical providers and facilities of their choice. (*Id.* ¶ 33.) Thus, since at least February 2012, TGH has treated approximately 2,500 of United's insureds. (*Id.* ¶ 32.) Upon information and belief, the plans require United to reimburse the insureds for out-of-network treatment at the usual, customary, and reasonable rates for the particular treatment. (*Id.* ¶¶ 52, 64, 84.)

When a United-insured patient registers at TGH, they execute "Assignment of Benefits" forms, assigning to Texas General their rights to benefits under their health care insurance plan with United. (*Id.* ¶¶ 34–35.) Texas General's billing agents make calls to United to verify and pre-certify that the patient is covered for the services to be provided. (*Id.* ¶ 118.) After TGH

provides health care services to the insured, TGH, as the insured's assignee under the plan, submits a claim to United for reimbursement of the medical expenses incurred at the usual, customary, and reasonable rates for the particular medical services provided. (*Id.* ¶¶ 40.)

Between February 11, 2012 and June 30, 2015, TGH treated over 1,969 of United's insureds and accordingly billed United for the medical services provided. (*Id.* ¶ 40.) Texas General's total billed charges for 1,969 specific claims were approximately $139,174,854.54, reflecting the usual, customary, and reasonable rates for the particular medical services provided at TGH. (*Id.*) However, United has routinely and capriciously underpaid TGH for services rendered to United's insureds. To date, United has reimbursed Texas General for just a fraction of the charges owed—$30,089,439.27. (*Id.* ¶ 42.) Even factoring in amounts that United contends are the patients' responsibility under the applicable plans (*e.g.*, co-payments, co-insurance, and deductibles) leaves an unpaid balance of $104,118,292.35 on these 1,969 claims. (*Id.*)

Texas General commenced this lawsuit on June 19, 2015, to recover the unpaid amounts. Texas General asserts causes of action under ERISA and for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, quantum meruit, and promissory estoppel. On October 23, 2015, Texas General filed its Second Amended Complaint, providing additional detail regarding the 1,969 specific healthcare claims properly before this court and calculating the amended total of United's underpayments at $104 million.

## III. APPLICABLE LEGAL STANDARDS

### A. LEGAL STANDARD IN DETERMINING 12(B)(6) MOTIONS

The federal pleading standard does not require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The facts alleged must simply raise a party's right to relief above the speculative level to survive dismissal. *Twombly*, 550 U.S. at 555. Thus, "[a] motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

Dismissal at this early stage in the proceedings is only appropriate if United can show "that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (emphasis added). A claim is properly pled—and is not subject to dismissal under Rule 12(b)(6)—if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 664.

In considering United's motion, the allegations in the SAC must be taken as true and liberally construed in favor of Texas General. *Martin-Jansin v. JP Morgan Chase Bank, N.A.*, 536 F. App'x 394, 395 (5th Cir. 2013). "This analysis is generally confined to a review of the complaint and its proper attachments." *Lane*, 529 F.3d at 557.

### B. Legal Standard in Determining 12(b)(1) Motions

In addition to its 12(b)(6) arguments, United purports to make limited arguments for dismissal under Rule 12(b)(1). A motion to dismiss under Rule 12(b)(1) "should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-

matter jurisdiction." *Castro v. U.S.*, 560 F.3d 381, 386 (5th Cir. 2009) (emphasis added), *rev'd en banc on other grounds*, 608 F.3d 266 (5th Cir. 2010). To the extent United argues lack of subject matter jurisdiction, United makes only facial attacks on the SAC. (*See* Mem. in Supp. of Defs.' Mtn. to Dismiss Pls.' 2d Am. Compl. ("Mem.") at 16-18 (facial challenge to Count Two), 21-22 (facial challenge to Count Five), 22-23 (facial challenge to Count Six).) A "facial attack on the complaint" pursuant to Rule 12(b)(1)—such as the ones United makes here—"requires the court merely to look and see if [a] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F. 2d 507, 511 (5th Cir. 1980). Consideration of materials beyond the SAC is not warranted when addressing a facial attack. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989) (noting that when a defendant raises a "facial attack" on subject matter jurisdiction, "the plaintiff is left with safeguards similar to those retained when a 12(b)(6) motion to dismiss for failure to state a claim is raised—the court must consider the allegations in the plaintiff's complaint as true.").

## IV. ARGUMENTS AND AUTHORITIES

### A. TEXAS GENERAL'S WELL-PLEADED ALLEGATIONS ESTABLISH THAT UNITED HAS WITHHELD ERISA PLAN BENEFITS.

United's principal attack on Texas General's claim for benefits under ERISA rests on the alleged *factual inaccuracy* of Texas General's allegations in the SAC. (*See* Mem. at 4–14.) United principally relies on extrinsic evidence not attached, included or referenced in the SAC. *Id.* In particular, United relies on third-party reports concerning Texas General's costs and charges as well as a sampling of United's own provider explanation of benefit forms ("PEOBs"). United contends that these documents controvert Texas General's well-pleaded allegations that

its charges were "usual, customary, and reasonable" as required under the plans at issue. (*Id*. at 6–14; SAC at ¶¶ 4, 40–43, 52–53, 63–66, Ex. A.) By so doing, United seeks to have the court make a factual determination on one of the central issues in this case based only on the slender "evidence" presented, which is not even properly before this Court. The "usual, customary and reasonable" nature of Texas General's charges is a uniquely factual matter that will require intensive discovery and is unlikely to be susceptible to determination before trial. The relative handful of PEOBs and third-party reports that United now seeks to put before the Court are hardly enough to make a full and final determination on this central factual issue.

Moreover, as discussed more fully below, United's reliance on extrinsic evidence is inappropriate at the motion to dismiss stage where the Court should only consider evidence beyond the four corners of the pleadings if the "documents [are] attached to the motion to dismiss" and "they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012) (citing *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Because none of the allegedly dispositive evidence was attached, much less incorporated or otherwise referenced, in the SAC, it is not properly before the Court. Instead, the Court is obligated to accept all well-pleaded allegations as true.

**1. Texas General Properly Pleads United's Withholding of Plan Benefits.**

United begins by alleging that Texas General has singularly failed to plead any term, fact, or statement of the plans at issue that could plausibly establish Texas General's claim for benefits. (Mem. at 4–9.) In doing so, United appears to be demanding that Texas General allege the specific reimbursement formula used by United in all plans at issue and how those formulas impacted Texas General. Neither the standards of Rule 12(b)(6) nor the case law relied upon by

Case 3:15-cv-02096-M Document 51 Filed 12/18/15 Page 13 of 32 PageID 1235

United require that level of specificity.

As noted above, Texas General's allegations are only required to contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570)." Where, as here, the plaintiff is seeking benefits under ERISA plans, the courts have generally required that the plaintiff allege some detail of the plans, but not nearly the level of detail that United claims is required. *See, e.g., Grand Parkway Surgery Ctr., LLC v. Health Care Service Corp.*, Civil Action No. H-15-0297, 2015 WL 3756492, at *4 (S.D. Tex. June 16, 2015). In *Grand Parkway*, the court held that the plaintiff had adequately identified the "plan terms which Plaintiff asserts confers the benefits it seeks to recover under § 502" where the complaint alleged only that the plan terms "'allow for reimbursement of reasonable and necessary medical expenses at usual and customary rates' and that [the defendant] made reimbursement at drastically reduced rates." *Id*. Texas General has met that standard here by alleging that:

- "Texas General's total billed charges for these claims were approximately $139,174,854.54, reflecting the usual, customary, and reasonable rates for the particular medical services provided at TGH." (SAC ¶ 40.)

- "Texas General's billed charges were especially reasonable, inter alia, in light of TGH's costs and the fact that only 25% of TGH's patient base includes patients insured by commercial insurance carriers, yet TGH must provide emergency care to any patient regardless of the patient's ability to pay and regardless of source of insurance payment." (SAC ¶ 41.)

- "However, to date, United has reimbursed Texas General for only a fraction of this amount—$30,089,439.27. Even factoring in amounts that United contends are the patients' responsibility under the applicable Plans (i.e., the United Subscriber's co-payments, coinsurance, and deductibles), the total payments approved by United are $35,056,562.19—a mere 25% of the total billed charges—leaving an unpaid balance of at least $104,118,292.35 on these 1,969 claims." (SAC ¶ 42.)

Case 3:15-cv-02096-M Document 51 Filed 12/18/15 Page 14 of 32 PageID 1236

- "[U]pon information and belief, all of the Plans require reimbursement of medical expenses incurred by United Subscribers at usual, customary, and reasonable rates." (SAC ¶ 52.)

- "All of the Plans require reimbursement of medical expenses incurred by United Subscribers at usual, customary, and reasonable rates." (SAC ¶ 64.)

Texas General's well-pleaded allegations sufficiently establish the terms of the plans at issue entitling Texas General to reimbursement and United's failure to comply with those terms. To the extent that United seeks more by requiring Texas General to plead the precise reimbursement formula for each plan covering the 1,969 claims at issue, they overstep the requirements at this procedural stage. *See, e.g.*, *Grand Parkway*, 2015 WL 3756492, at *4 (holding that "[w]hether the terms of the plans at issue in this case actually confer the benefits Plaintiff alleges <u>can be raised on a motion for summary judgment</u>.") (emphasis added).

Moreover, in light of United's behavior as alleged in the SAC concerning its disclosure, or lack thereof, of the plan terms at issue, it is inappropriate for United to claim that Texas General has not been sufficiently detailed in its description of the plan terms. As discussed more fully at section IV.B, *infra*, United has regularly withheld the details of its plans from Texas General by refusing to provide any plan details, even when it is required to do so by ERISA and its accompanying regulations during the claims appeals process. (*See* SAC at ¶¶ 56–59.) For United to now claim that the SAC fails because it does not allege details that United wrongfully withholds from Texas General is wholly inappropriate. *See, e.g.*, *N. Cypress Med. Ctr. Op. Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 303–04 (S.D. Tex. 2011) (excusing a plaintiff provider's failure to exhaust administrative remedies where the defendant insurer had repeatedly refused the provider's requests for plan documents and details). In effect, United seeks to use its improper recalcitrance simultaneously as a sword to dismiss Texas General's claims and a shield

against Texas General's routine administrative appeal of denied and underpaid claims. Though such conduct is specifically prohibited by the plain language of ERISA section 503, United is apparently undaunted. *See* Section IV.D., *infra*.

**2. Texas General's Well-Pleaded Allegations Are Sufficient to Establish That United Improperly Denied Numerous Claims.**

United, cognizant that Texas General has sufficiently alleged the plan provisions entitling it to relief and aware of its own inappropriate withholding of plan details, claims that the SAC contains no factual allegations of United's improper denials. (Mem. at 9–14.) In support, United relies on a handful of PEOBs that purportedly establish that United did, in fact, properly deny claims and provide appropriate justification to Texas General. (*Id.*) As noted above, United's introduction of this extrinsic evidence is wholly inappropriate at this stage in the proceedings and should not be considered. United is once again improperly seeking a *factual* adjudication. While Texas General is confident in the factual accuracy of their allegations, it is procedurally improper to get into a claim-by-claim evidentiary argument at this stage when discovery has not even commenced, no party has had the opportunity to develop the record, and United has only introduced a sliver of hand-picked information for the Court.

As the Court is aware, it is well-established that, in deciding whether to grant a motion to dismiss, a district court may not "'go outside the complaint.'" *Gines*, 699 F.3d at 820 (quoting *Scanlan.*, 343 F.3d at 536). "There is one recognized exception to that rule: a district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint *and* are central to the plaintiff's claim." *Id.* (emphasis added) (citing *Scanlan*, 343 F.3d at 536). Of course, this exception does not apply here because the PEOBs were not attached to, referred to, cited in, or central to the SAC. *See id.* United suggests because Texas

General included claim numbers on Exhibit A to the SAC, it somehow incorporated all the underlying documents related to each claim. (Mem. at 4, n.19.) United also seeks to include declaration testimony regarding the meaning of those claim documents. (*Id.*) This Court should reject this fact-intensive and improper effort to circumvent the procedural rules applicable at this stage of litigation. Consideration of the PEOBs and any argument based on them is simply improper at this stage.[1] Therefore, United's Motion to Dismiss for the alleged *factual inaccuracy* of Texas General's allegations regarding United's improper denial of benefits should be denied.

**B. TEXAS GENERAL HAS ADEQUATELY PLED EXHAUSTION OF ADMINISTRATIVE REMEDIES NECESSARY TO PLEAD ITS ERISA CLAIMS OR, ALTERNATIVELY, THAT IT IS EXCUSED FROM EXHAUSTING SUCH REMEDIES.**

United contends that Texas General failed to exhaust administrative remedies prior to asserting the ERISA claims, and that such failure bars Texas General's claims. (Mem. at 15-16.) As a preliminary matter, other district courts confronted by similar arguments have held that "dismissal for failure to allege exhaustion of administrative remedies is not appropriate on a motion to dismiss under either 12(b)(1) or 12(b)(6)." *N. Cypress*, 782 F. Supp. 2d at 303–04 ("Exhaustion of administrative remedies … is an affirmative defense … [a] complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a positive affirmative defense.") (internal quotations omitted).

[1] Even so, and as will be developed more fully in discovery, Texas General disputes United's characterizations of and arguments regarding the PEOBs are inaccurate and do not represent the complete evidentiary record on any issue presented in United's motion to dismiss. Among other things, Texas General has asserted 1,969 claims before this Court, yet United has only presented EOBs on approximately fifty-four (54) claims. (*See* App. in Supp. of Defs.' Motion ("App.") at Ex. 2 (APP0013–APP0015, APP0154–APP0156, APP0335–APP0336, APP0338–APP0423, APP0581–APP0583, APP0585–APP0588).) United cannot very well challenge the sufficiency of Texas General's pleadings in one breath while, with the very next, claim that alleged "evidence" regarding a mere fifty-four claims is sufficient proof of the appellate procedures and processes involved in the remaining 1,915 claims.

Moreover, United's exhaustion arguments are deficient in several respects: (i) United ignores Texas General's well-pled allegations that its administrative remedies were exhausted; (ii) Texas General's administrative remedies are deemed exhausted as a result of the procedural insufficiency of United's appeals process; and (iii) to the extent Texas General has not exhausted their administrative remedies for individual claims, and such remedies are not waived, those individual claims are excused by futility.

**1. Texas General Properly Pleads Exhaustion of Administrative Remedies.**

Texas General's allegations in the SAC are sufficiently factually detailed that, when accepted as true, they establish that Texas General has exhausted its administrative remedies. (*See* SAC ¶¶ 55–59.) In particular, Texas General alleges:

- In seeking a reconsideration of improperly denied or underpaid claims for benefits, Texas General followed the processes set out in "UnitedHealthcare: Claim Reconsideration Request Reference Guide," a document prepared by United. (SAC ¶ 56.)

- In seeking an appeal of improperly denied requests for reconsideration and/or denied or underpaid claims, Texas General followed the appeals process set out by United in its publication titled "UnitedHealthcare Community Plan: Appeal Request Form." (SAC ¶ 57.)

- Texas General "exhaust[ed] the appeals procedures set forth in United's own documents," yet "United have failed to fully reimburse Texas General" for the "health care services" Texas General provided to United's subscribers with "$104 million remain[ing] due and owing …." (SAC ¶ 58.)

- Texas General has followed and exhausted United's appeals processes, yet United have "failed to adequately explain the basis for its dramatic underpayments to Texas General" and has failed or refused to:
    - provide the specific reason or reasons for the denial of claims;
    - provide the specific plan provisions relied upon to support the denials;

Case 3:15-cv-02096-M Document 51 Filed 12/18/15 Page 18 of 32 PageID 1240

- o provide the specific rule, guideline or protocol relied upon in making the decision to deny claims;
- o describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and
- o notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits. (SAC ¶ 59.)

Cognizant that Texas General has properly pleaded exhaustion, United attempts to challenge the accuracy of Texas General's allegations by again improperly asking the Court to consider the PEOBs as extrinsic evidence purportedly controverting Texas General's allegations. (*See* Mem. at 15-16.) However, at this stage, the Court is obligated to accept all well-pleaded allegations regarding exhaustion as true. As a result, United's Motion to Dismiss for Texas General's failure to exhaust its administrative remedies should be denied.

United also contends that administrative remedies have not been exhausted for some unspecified sub-set of Texas General's claims that are in the process of being appealed. United argues that the pending appeals of some of Texas General's claims bars *all* of Texas General's claims (even those that have indisputably been exhausted). (Mem. at 15.) While Texas General acknowledges (and pleads) that it is still in the process of exhausting administrative remedies for some of the nearly two thousand claims at issue (which exhaustion is excused, as explained below), that is not an absolute bar to pursuing claims in this Court.

In support of its contention, United has relied on a handful of cases dealing with individual claimants bringing a single claim. (*See id.* at 15, n.58.) In such cases, it may be appropriate to require exhaustion to prevent the courts from being deluged in a sea of premature, individual claims brought before any record or course of dealing can be developed. However,

Texas General is now before the Court with nearly two-thousand individual claims that have arisen over the last three years. (*See* SAC ¶¶ 55–59 & Ex. A.) To require Texas General to bring these claims individually, as United appears to desire, would be burdensome on both this Court and the parties involved. Indeed, courts confronted with similar situations have permitted all claims to be brought together at once, whether or not the administrative appeals process is fully completed as to some of them. *See Bowen v. City of New York*, 476 U.S. 467, 482–86 (1986) (allowing the improper denial of benefits claims of class members who had not exhausted their administrative remedies under the much stricter exhaustion standard of 42 U.S.C. § 405(g) to proceed where all of the claims were alleging the same fundamental perversion of the disability claims process).

**2. Under the Plain Language of ERISA Section 503, Texas General's Administrative Remedies are Deemed Exhausted as a Result of United's Insufficient and Inappropriately Administered Appeals Process.**

As discussed more fully below at Section IV.D., *infra*, Texas General's administrative remedies are deemed exhausted under the plain language of ERISA section 503. Under section 503 and its accompanying regulations, "every employee benefit plan <u>shall</u> — provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." ERISA § 503 (29 U.S.C. § 1133) (emphasis added); *see also* 29 CFR § 2650.503-1. Moreover, the accompanying regulations at 29 CFR § 2650.503-1 set forth a number of requirements to establish "reasonable claims procedures" in determining claims for benefits. *See, e.g., id.* at § 2650.503-1(f) (written notice of benefit determination must

be provided within ninety (90) days), § 2650.503-1(g) (the plan administrator shall provide a "written or electronic notification of any adverse benefit determination" stating the "specific reason or reasons for the adverse determination"). Failure to "establish" or "follow" reasonable claims procedures as set forth by 29 CFR § 2650.503-1 means that a "claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies" under ERISA section 502(a). *Id.* at § 2650.503-1(l) (emphasis added); *see also Baptist Mem'l Hosp.—DeSoto, Inc. v. Craig Auto., Inc.*, 392 F. App'x 289, 292–93 (5th Cir. 2010) (deeming a plaintiff's administrative remedies exhausted where the defendant had failed to comply with the procedural requirements of 29 CFR § 2650.503-1).

As set forth in detail in the SAC, United has repeatedly failed to meet one or more of the standards set forth in ERISA section 503 and its accompanying regulations establishing "reasonable claims procedures." (*See* SAC ¶¶ 58, 78–79.) Texas General alleges, among other failings, that United has refused: (i) to provide the specific reason for denial of the claim(s); (ii) to provide the specific plan provisions relied upon to support denial; (iii) to provide the specific rule, guideline or protocol relied upon to deny; (iv) to describe what additional material or information is necessary to perfect a claim; (v) to notify the relevant parties that they are entitled to have the information relevant to the claims provided for free; and (vi) to provide a statement describing the appeal procedures available along with all required information in those appeals. *See, e.g.*, SAC at ¶¶ 59, 78 & Ex. A at 5–33 (demonstrating that no rejection codes were provided by United for approximately 1,695 claims). As these well-pleaded factual allegations must be accepted as true, United's effort to dismiss Texas General's claims for benefits should be denied.

Aware of this procedural hurdle, United again attempts to "prove" the procedural and substantive reasonableness of their appellate procedures and practices through the introduction of hundreds of pages of additional extrinsic evidence. *See* App. at Ex. 2 (APP0013–APP0591). Again, United's submission is improper at this stage and has no bearing on this Motion. *See Gines*, 699 F.3d at 820 (citing *Scanlan*, 343 F.3d at 536).

**3. To the Extent that Texas General Has Not Yet Exhausted Their Administrative Remedies in Some Sub-Set of Claims, Such Failure is Excused by Futility.**

United suggests that a failure to fully exhaust administrative remedies is an absolute bar to filing suit. (Mem. at 15.) However, the judicially-created exhaustion requirement under ERISA is excused by "futility." *See, e.g.*, *N. Cypress*, 782 F. Supp. 2d at 304 ("The Fifth Circuit has held that exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would be a patently futile course of action.") (citations and internal quotation marks omitted); *see also id.* at 305 ("The Court is persuaded that dismissal for failure to allege exhaustion of administrative remedies is not appropriate on a motion to dismiss under either 12(b)(1) or 12(b)(6)."); *Taylor v. Prudential Ins. Co. of Am.*, 954 F. Supp. 2d 476, 481–84 (S.D Miss. 2013) (collecting cases). Here, the SAC contains allegations that demonstrate "futility" including that: (i) United repeatedly denied Texas General's claims of totaling more than $104 million; and (ii) United refused to provide the information necessary for Texas General to make an appropriate appeal. (SAC ¶¶ 57–58(i), 59(ii).) In such situations, where insurers and/or plan administrators refuse to provide the plan documents and explanations necessary to have "meaningful access" to the claims appeal procedures, courts have regularly found futility. *See, e.g.*, *Bernstein v. Citigroup, Inc.*, 2006 WL 2329385, at *2–*3 (N.D. Tex.

July 5, 2006) (mem. op.) (denying a motion to dismiss where the plaintiff's complaint alleged that he had requested, but had not been provided, "various plan documents, calculations, and correspondence from the plan" because if he "proves such facts, he may be entitled to relief."); *see also N. Cypress*, 782 F. Supp. 2d at 304–305 ("Even if dismissal for failure to exhaust were appropriate at this stage, North Cypress has pled facts indicating that it was denied meaningful access to administrative remedies. North Cypress argues and the Court agrees that it could be excused from exhaustion on that basis.").

United looks past Texas General's allegations and asserts instead that Texas General failed to plead futility because there is no allegation of "hostility" or "bias." (Mem. at 15.) United relies principally on the Fifth Circuit's decision in *Bourgeois* to contend that such a showing is required. *Id.* In that case, the Fifth Circuit upheld *summary judgment* of the plaintiff's claim with regard to his futility argument because he failed to present sufficient evidence that the internal appeals board would have rejected his appeal. *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps*., 215 F.3d 475, 479 (5th Cir. 2000). However, the Fifth Circuit in *Bourgeois* actually made no specific finding regarding hostility or bias. Although it noted that hostility or bias had been required in one other case, it recognized that the court "has not decided" whether hostility or bias was required on different facts. *Id.* at 479. And, the court never got to that issue in *Bourgeois* because it found the plaintiff had not established futility for other reasons. He had simply elected not to pursue <u>any</u> administrative remedies because a high level officer had told him he would not succeed. *Id.* at 480. In contrast, Texas General has repeatedly pursued administrative appeals with little to no success.

Moreover, even if Texas General were required to allege "hostility" or "bias" at the pleading stage in order to demonstrate "futility" in this context, Texas General has more than

sufficiently pled facts demonstrating that United is hostile to Texas General's claims. Among other things, Texas General has pled that United's pattern of nonpayment reflects no consistency or rationality and is typically not accompanied by any meaningful explanation. Texas General has further alleged that it has already fully exhausted a number of their claims and, given its extensive course of dealings with United, it is certain that the remaining claims will be denied. Courts have found the requisite futility in these circumstances.[2] *Taylor v. Prudential Ins. Co. of America*, 954 F. Supp. 2d 476, 483 (S.D. Miss. 2013); *see also Dozier v. Sun Life Assur. Co. of Canada*, 466 F.3d 532, 535–36 (6th Cir. 2006). For all the foregoing reasons, dismissal for failure to plead exhaustion of administrative remedies is not warranted.

### C. TEXAS GENERAL'S CLAIM FOR ERISA BREACH OF FIDUCIARY DUTY IS SUFFICIENTLY PLED

United primarily attacks Texas General's right to bring claims for breach of fiduciary duty on the suggestion that the Assignment of Benefits that Texas General receives from its patients is too narrow to encompass such a claim. (Mem. at 16–18.) United alleges that such assignments must be "expressly and knowingly assigned." (*Id.*) In support, United relies on a case that dismissed a breach of fiduciary duty claim where the plaintiff was arguing that it had been assigned by operation of law. *Tex. Life, Accident Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997). However, Texas General makes no such argument. Rather, Texas General's right to bring its claims arises from the express assignment of benefits quoted in paragraph 35 of the SAC. (SAC ¶ 35.) As previous courts in the Fifth Circuit have recognized, "express and knowing" assignments are only required where the

[2] One need only look to insulting tone in United's opening brief in support of this Motion and in its counterclaims against Texas General to discern United's patent hostility to Texas General's claims. And to the extent that the Court finds Texas General's allegations of hostility in any way insufficient, the Court should grant Texas General leave to plead more specifics.

assignment was by operation of law and not by an express assignment of benefits and rights, such as that alleged and documented by Texas General in this case. *N. Cypress*, 782 F. Supp. 2d at 302. Because Texas General was expressly assigned the right to bring such claims, United's Motion to Dismiss Texas General's claims for breach of fiduciary duty should be denied.

Furthermore, under ERISA section 502(a)(2), a "beneficiary" is allowed to bring a standard breach of fiduciary duty suit for the benefit of the subject plan. *Tolson v. Avondale Industries, Inc.*, 141 F. 3d 604, 611 (5th Cir. 1998). By virtue of the Assignment of Benefit form, Texas General acquires the status of a beneficiary entitled to bring ERISA claims. *N. Cypress*, 782 F. Supp. 2d at 301. As in *North Cypress*, the language used in the Assignment of Benefits form by Texas General is sufficiently broad to confer upon Texas General standing as a "beneficiary" such that it can properly bring claims for breach of fiduciary duty for the benefit of all plan subscribers. *See id.*

## D. TEXAS GENERAL'S CLAIMS UNDER ERISA SECTION 503 ARE PROPER

Texas General also properly asserts claims under ERISA section 503 for United's failures to provide full and fair reviews of Texas General's claims, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations. (SAC ¶¶ 76-81.) In seeking dismissal of Texas General's section 503 claims, United contends that section 503 grants no independent right of action. (*See* Mem. at 18–20.) In support, United relies on two cases that, in fact, state no such thing. (*See id*. at 19 n.78 (citing *Baptist Memorial* and *Robinson*).) In *Baptist Memorial*, the Fifth Circuit specifically excused the plaintiff's failure to exhaust administrative remedies because the defendant had failed to comply with ERISA's appeal requirements. *Baptist Mem'l*, 392 F. App'x at 294. The Court made no mention of an independent right of action under section 503 and certainly did not hold that no such right of

action exists. *See id.*

Likewise, the Fifth Circuit in *Robinson* vacated summary judgment for the insurer and remanded with instructions to enter *judgment in favor of the beneficiary* based in part on his *independent* claim of procedural failings under ERISA section 503. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392–94, 396–97 (5th Cir. 2006) (discussing a section 503 claim as a claim occurring under 29 U.S.C. § 1133).

In both cases, the Fifth Circuit recognized that a defendant's violation of section 503 excuses a plaintiff's failure to exhaust administrative remedies, and in *Robinson*, the Fifth Circuit went so far as to remand with instructions to enter judgment for a plaintiff on his section 503 claim. *Id.* at 396–97; *see also Baptist Mem'l*, 392 F. App'x at 294. Texas General's section 503 claims are no different than those reviewed and approved in *Baptist Memorial Hospital* and *Robinson*. (*See* SAC ¶¶ 55–59, 77–81.)

United also suggests, without support, that Texas General may not assert claims under both sections 502(a)(3) and 503, as Texas General has done in the SAC. (Mem. at 19.) However, at this early stage, ERISA litigants are allowed to plead multiple theories of relief with a final determination of the appropriate remedy and claims to occur at the conclusion of the case once the court can determine whether the claims for relief are duplicative. *E.g.*, *N.Y. State Psychiatric Ass'n, Inc. v. United Health Group*, 798 F.3d 125, 133–35 (2nd Cir. 2015). Therefore, Texas General is permitted to assert claims under section 503 as an alternative to their claims for wrongful denial of benefits under section 502(a), as it has done here.

In the alternative, United argues that, even if section 503 is an independent right of action, it is only legitimate in an action against the plan itself and United is not a plan. (Mem. at 20.) But United's argument is based on its mere unsupported statement in its brief that it is not

Case 3:15-cv-02096-M Document 51 Filed 12/18/15 Page 26 of 32 PageID 1248

the plan. (*Id.*) This naked assertion cannot, at this stage, defeat Texas General's well-pleaded allegations establishing United to be akin with the plans. (*See* SAC, ¶¶ 2, 12 (alleging that United "[is] in the business of providing health benefit plans").) Thus, United's argument fails to present any proper ground for dismissing Texas General's section 503 claim.

### E. Texas General Properly Pleads Breach of Contract Claims Against United.

Texas General properly asserts breach of contract claims against United for its failure to pay claims for benefits owing under plans that are not governed by ERISA ("Non-ERISA Plans"). (SAC ¶¶ 82–90.) Texas General alleges that such plans are valid and enforceable contracts that "require reimbursement of medical expenses incurred by United Subscribers at usual, customary, and reasonable rates," and that, under the terms of the plans, "United Subscribers are entitled to coverage for the services that they received from Texas General." (*Id.* ¶¶ 83–84.) Further, Texas General pleads, United's insureds assigned to Texas General the right to receive reimbursements under the plans for the services provided. (*Id.* ¶ 85.) However, when Texas General submitted claims for reimbursement of its medical expenses at usual, customary, and reasonable rates, United failed to reimburse Texas General, in breach of the plans. (*Id.* ¶¶ 4, 40, 52, 82, 86.)

United argues incorrectly that Texas General's breach of contract claims are deficient because Texas General fails to "identify a specific provision of the contract that was allegedly breached." (Mem. at 20.) As with its ERISA denial of benefits claims, Texas General specifically pleads that United breached the provision of the plans that requires United to reimburse medical expenses incurred by the subscriber at usual, customary, and reasonable rates. (SAC ¶¶ 84, 86.) There simply is no basis to claim, as United has *without explanation*, that

Texas General did not identify the specific provision United breached.[3]

United additionally attempts to argue that Texas General's breach of contract claims must be dismissed as to UHS because, according to United, UHS is a third-party administrator and, therefore, not a party to the insurance plans that were breached. United's argument wholly ignores Texas General's pleadings in the SAC that both UHS and UHIC provide health care insurance and benefits to United Subscribers pursuant to their health care benefit plans and policies of insurance. (SAC ¶¶ 2, 6, 12.) Taken as true, Texas General's well-pleaded allegations establish that both UHIC *and* UHS are parties to plans that are the subject of Texas Generals' breach claims.

### F. Texas General Properly Pleads Claims for Breach of the Duty of Good Faith and Fair Dealing

Texas General asserts that United breached the duty of good faith and fair dealing regarding the Non-ERISA Plans. (SAC ¶¶ 91–101.) As with Texas General's breach of contract claims, United contends that the claims should be dismissed against UHS based on United's naked assertion that UHS is not party to any of the Non-ERISA Plans. (Mem. at 21.) Again, however, United impermissibly asks the Court to ignore Texas General's well-pleaded allegations that both UHS and UHIC are party to various plans that are the subjects of Texas General's breach claims. (SAC ¶¶ 2, 6, 12.) Once again, United's request ignores the 12(b)(6)

---

[3] To the extent United suggests that Texas General's pleading was inadequate for failure to cite to a specific section or paragraph number in the plans or failure to quote the provision that United breached, United's own briefing acknowledges that such specificity is not required. (*See* Mem. at 20 n.81 ("the complaint must describe the alleged terms of the contract in a sufficiently specific manner to give the defendant notice of the nature of the claim. *For example*, a claim on a written contract must either (1) quote relevant contractual language; (2) include a copy of the contract as an attachment, or (3) ***summarize the contract's purported legal effect***.") (citing *Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 753 (N.D. Tex. 2005) (emphasis added)).) Given the information alleged, which includes the specific provision breached and a summary of the plan's purported legal effect, United cannot genuinely claim that Texas General's pleadings fails to give notice of the nature of its breach of contract claims.

Case 3:15-cv-02096-M Document 51 Filed 12/18/15 Page 28 of 32 PageID 1250

standard and, therefore, fails to state a proper ground for dismissal.

Second, while United acknowledges it owes its insureds the duty of good faith and fair dealing, United claims its duty does not extend to Texas General. (Mem. at 21.) However, United's analysis is flawed, because United's subscribers assigned their rights and "all benefits payable" under United's plans to Texas General, including their rights to recover for United's breach of the duty of good faith and fair dealing. (SAC ¶¶ 35, 94-95, 99.) Thus, the well-pleaded allegations, taken as true, establish that Texas General has properly pleaded breaches of the duty of good faith and fair dealing. Dismissal of this claim is, therefore, not warranted.

### G. TEXAS GENERAL HAS PROPERLY PLEADED PROMISSORY ESTOPPEL CLAIMS AGAINST UNITED

Texas General has also properly asserted a claim for promissory estoppel on the grounds that United represented that the medical services sought by United's subscribers were covered under United's plans and that United would make payment for such services. (SAC ¶ 117–18.) United's statements were made during telephone calls by Texas General's billing agents to verify and pre-certify coverage prior to Texas General providing services to United's insureds. (*Id.* ¶ 118.) Thus, Texas General reasonably relied on United's assurances in providing treatment to United's subscribers, and Texas General was harmed when United failed to make payment. (*Id.* ¶¶ 118-119.)

United incorrectly argues that the promises alleged are too vague to support promissory estoppel claims. (Mem. at 24.) Texas General alleges that, in response to inquiries by Texas General's billing agents prior to providing treatment to United's subscribers, United represented that the medical treatment sought was covered by the plans and that United would make payment for the services. (SAC ¶¶ 117-118.) The alleged promises are sufficiently definite for Texas

Case 3:15-cv-02096-M Document 51 Filed 12/18/15 Page 29 of 32 PageID 1251

General to reasonably rely on them. Therefore, Texas General has alleged promises sufficient to support claims for promissory estoppel.

United's reliance on the *Electrostim* case is wholly misplaced. The *Electrostim* court did not review the sufficiency of a promise to support a claim for promissory estoppel. Instead, the court concluded (for multiple reasons) that the plaintiff failed to adequately plead a claim for implied contract, a distinct cause of action. *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015). Therefore, *Electrostim* is not relevant to the analysis.

United also contends that Texas General's own pleadings refute that Texas General could have relied on United's promises to pay for the services. (Mem. at 24–25.) To the contrary, Texas General pleads that it relied upon United's promises, which allegations must be taken as true. Specifically, Texas General plead: "In the absence of Defendants statements that they would make remuneration for the fees associated with this treatment, Texas General would not have provided the hospital services." (SAC ¶ 118.)

Despite Texas General's well-pleaded allegations of reliance, United points to Texas General's allegations that (i) Texas General is legally required to provide emergency care regardless of the patient's ability to pay or source of payment; and (ii) a patient's ability to pay does not affect TGH's delivery of healthcare services, to suggest that Texas General could not have relied upon United's promises. If that were correct, however, Texas General's billing agents would have never called United to pre-verify coverage. Indeed, while Texas General is able to comply with legal obligations to provide emergent care and able to provide certain financial aid assistance to those in need, Texas General's entire operation would not be viable without paying patients. Thus, Texas General is not in a position, as United's argument

presupposes, to offer free medical care to all. Texas General relied on United's representations in deciding to provide treatment to United's subscribers.

Finally, United attempts to argue that Texas General failed to plead that they suffered a detriment for having relied on United's promises, because, United contends, Texas General can pursue amounts owed directly from the patient. (Mem. at 24–25.) Whether or not that is the case, the well-pleaded allegations are that Texas General relied on *United's promises of coverage* in deciding to treat the subscribers. According to the pleadings, which must be taken as true, United's promises induced Texas General's reliance—not some possibility of recourse to the subscribers. Thus, United's argument is irrelevant to the claim as alleged, and United fail to offer any proper ground for dismissing Texas General's promissory estoppel claim.

### H. No Basis Exists for Dismissing Texas General's Requests for Injunctive and Declaratory Relief

Finally, United argues that dismissal of Texas General's claims for injunctive and declaratory relief should follow if all of Texas General's other claims are dismissed. United does not otherwise argue these claims are not properly pled. For the reasons stated above, Texas General has properly pleaded claims for relief; therefore, dismissal of Texas General's claims for injunctive and declaratory relief is not warranted.[4]

## V. CONCLUSION AND PRAYER

WHEREFORE, Texas General respectfully requests that the Court deny United's Motion to Dismiss and grant Texas General all other relief, at law or in equity, to which it may be entitled.

[4] After considering United's Motion, Texas General has conceded that its state law claims for breach of fiduciary duty and quantum meruit should be with withdrawn.

Dated: December 18, 2015

Respectfully submitted,

**K&L GATES, LLP**

By: /s/ *Beth Bivans Petronio*
Beth Bivans Petronio
Texas Bar No. 00797664
beth.petronio@klgates.com
Thomas K. Schroeter
Texas Bar No. 24056279
thomas.schroeter@klgates.com
Edward L. Vishnevetsky
Bar No. 24063049
edward.v@klgates.com
1717 Main Street, Suite 2800
Dallas, Texas 75201
(214) 939-5500 Telephone
(214) 939-5849 Facsimile

Anthony P. La Rocco
*Admitted Pro Hac Vice*
anthony.larocco@klgates.com
George P. Barbatsuly, Esq.
*Admitted Pro Hac Vice*
george.barbatsuly@klgates.com
One Newark Center, 10th Floor
Newark, New Jersey 07102
(973) 848.4104 Telephone
(973) 556.1584 Facsimile

***Attorneys for Texas General Texas General Hospital, LP, and Texas General GP, L.L.C.***

## CERTIFICATE OF SERVICE

I certify that on December 18, 2015, a true and correct copy of the foregoing document was served on counsel for United in accordance with the Federal Rules of Civil Procedure via email and the Court's electronic filing system, as follows:

Andrew G. Jubinsky
andy.jubinsky@figdav.com
Raymond E. Walker
ray.walker@figdav.com
Amber M. Grand
amber.grand@figdav.com
**FIGARI & DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

Brian D. Boyle
bboyle@omm.com
Meaghan VerGow
mvergow@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*/s/ Thomas K. Schroeter*
Thomas K. Schroeter