Exhibit G

2018 WL 2945628
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas, Galveston Division.

Neil GILMOUR, et al. Plaintiff.
v.
HUMANA HEALTH PLAN OF
TEXAS, INC., et al. Defendant.

Civil Action No. 3:17–CV–00179
|
Signed 05/18/2018

**Attorneys and Law Firms**

Andrew K. Meade, Walter J. Cicack, Jeremy M. Masten, Hawash Meade Gaston Neese & Cicack LLP, Houston, TX, for Plaintiff.

Richard Glenn Foster, Porter Rogers Dahlman & Gordon, P.C., San Antonio, TX, for Defendant.

## MEMORANDUM AND RECOMMENDATION

ANDREW M. EDISON, UNITED STATES MAGISTRATE JUDGE

***1** Before the Court is Defendants Humana Health Plan of Texas, Inc. and Humana Insurance Company's Partial 12(b)(6) Motion to Dismiss Certain Non–Viable Claims Alleged in Plaintiffs' First Amended Complaint ("Motion to Dismiss"). (Dkt. 18). Judge George C. Hanks, Jr. has asked this Court to provide a Memorandum and Recommendation on the Motion to Dismiss pursuant to 28 U.S.C. § 636(b)(1)(b). (Dkt. 32). This Court has considered the Motion to Dismiss, reviewed various pleadings submitted in support of and in opposition to the Motion to Dismiss, and heard oral argument. For the reasons stated below, this Court recommends that the Motion to Dismiss be DENIED.

## I. BACKGROUND

Plaintiff Neil Gilmour, III filed this action in his capacity as Trustee for the Grantor Trusts of seven former hospitals and their parent company—Victory Medical Center Craig Ranch, LP; Victory Medical Center Landmark, LP; Victory Medical Center Mid–Cities, LP; Victory Medical Center Piano, LP; Victory Medical Center Southcross, LP; Victory Medical Center Beaumont, LP; Victory Surgical Hospital East Houston, LP; and Victory Parent Company, LLC (collectively, "Victory"). Defendants Humana Health Plan of Texas, Inc. and Humana Insurance Company (collectively, "Humana") are in the health insurance business and provide health benefit plans and health insurance policies (the "Humana Plans") to businesses and individuals throughout the United States. Victory provided medical procedures to hundreds of Humana insureds across the State of Texas.

This lawsuit challenges the alleged denial or underpayment of roughly 250 separate out-of-network health care claims submitted by Victory on behalf of Humana–insured patients. Invoking both the federal Employee Retirement Income Security Act ("ERISA") and state common law, Victory seeks to recover more than $9 million in damages from Humana.

According to Victory's First Amended Complaint, the Humana Plans require reimbursement of medical expenses incurred by Humana insureds at specific rates. Victory claims that Humana "breached the terms of the Humana Plans by refusing to make out-of-network reimbursements for charges covered by the Humana Plans at the applicable rates" expressly provided by the Humana Plans. (Dkt. 17 at 21–22). These breaches allegedly included: (i) denial of valid claims; (ii) acceptance of a claim, in whole or in part, but a failure to pay at a rate specified in the Humana Plans; and/or (iii) acceptance of a claim, but then "paying" the claim by offsetting the owed payment against monies Humana allegedly overpaid Victory for prior, unrelated insured claims.

Victory also alleges that, as part of the insurance verification process, Humana personnel represented to Victory that Victory's healthcare services would be reimbursed at reasonable and customary rates or usual and customary charges. In reliance on these representations, Victory maintains that it provided medical services to Humana insureds, fully expecting to be paid at the amounts promised. Victory asserts that "Humana failed, and continues to fail, to pay Victory consistent with the representations made by its agents and

its unambiguous promise to pay for the services provided to its members." (Dkt. 17 at 19).

***2** In addition to seeking monetary damages for the denial or underpayment of claims, Victory complains about Humana's alleged failure to follow appropriate claims processing procedures.

Victory's First Amended Complaint alleges eight separate causes of action: (1) breach of plan provisions for benefits in violation of ERISA; (2) denial of full and fair review and claims procedures in violation of ERISA; (3) breach of contract, non–ERISA; (4) breach of duty of good faith and fair dealing, non–ERISA; (5) breach of fiduciary duty; (6) promissory estoppel; (7) negligent misrepresentation; and (8) insurance code violations.

Humana filed a Motion to Dismiss, asking this court to dismiss four of the causes of action: Count 2—denial of full and fair review and claims procedures in violation of ERISA; Count 5—breach of fiduciary duty in violation of ERISA; Count 6—promissory estoppel; and Count 7—negligent misrepresentation.

## II. RULE 12(B)(6) STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, courts consider whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007) ) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true and must consider those facts in the light most favorable to the plaintiff." *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) ). "[A] motion to dismiss under Rule 12(b)(6) 'is viewed with disfavor and is rarely granted.' " *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) ).

## III. DISCUSSION

### A. HUMANA'S REQUEST TO DISMISS COUNT 2 AND COUNT 5

Humana first contends that Victory's claims for procedural violations pursuant to ERISA Section 502(a)(3) (Count 2) and breach of fiduciary duty pursuant to ERISA Section 502(a)(3) (Count 5) must be dismissed because they are duplicative of Humana's claim for unpaid benefits under ERISA Section 502(a)(1)(B).

Before critically analyzing this position, the Court first reviews the statutory language contained in ERISA Sections 502(a)(1)(B) and 502(a)(3) to understand exactly what these statutory provisions require. Section 502(a)(1)(B) authorizes a suit by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) permits a party to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

In *Varity Corp. v. Howe*, the United States Supreme Court determined that Section 502(a)(3) is a " 'catchall' remedial section" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." 516 U.S. 489, 512 (1996). Subsequent Fifth Circuit decisions interpreted *Varity* as creating a rule that plaintiffs can sue pursuant to Section 502(a)(3) for breach of fiduciary duty or for procedural violations only "when no other appropriate equitable relief is available." *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998). *See also Rhorer v. Raytheon Engineers & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999), *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) (a plaintiff "may bring a private action for breach of fiduciary duty only when no other remedy is available under [Section 502]."). As a result, district courts in the Fifth Circuit routinely dismissed cases on Rule 12(b)(6) grounds when plaintiffs tried to assert claims under both Section 502(a)(1) and Section 502(a)(3). *See, e.g., Adams v. Prudential Ins. Co. of Am.*, No. 05–2041, 2005 WL 2669550, at *2. (S.D. Tex. Oct. 19, 2005) (on motion to dismiss, holding plaintiff failed to state a claim under Section 502(a)(3) because plaintiff had adequate redress through right to

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

initiate action under Section 502(a)(1) ); *Constantine v. Am. Airlines Pension Benefit Plan*, 162 F. Supp. 2d 552, 557 (N.D. Tex. 2001) ("Because Plaintiff has resorted to the principal remedy for ERISA claimants [Section 502(a)(1)(B) ], she has also failed to state a claim under [Section 502(a)(3) ] as described by the Supreme Court in *Varity*.").

***3** Victory argues that the United States Supreme Court's 2011 opinion in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) altered the general rule that prohibited a plaintiff from simultaneously pleading a claim under Section 502(a)(1)(B) and Section 502(a)(3). In *Amara*, the Supreme Court considered a district court's ruling in favor of pension plan beneficiaries under Section 502(a)(1)(B). 563 U.S. at 425. After finding that the pension plan beneficiaries were misled by an inaccurate Summary Plan Description ("SPD"), the district court attempted to reform the plan under Section 502(a)(1)(B) to more closely reflect the terms of the SPD. *Id.* at 428. The district court did not address plaintiffs's Section 502(a)(3) claim, which had also been asserted in the case. *Id.* The Supreme Court vacated the district court's judgment, holding that reformation of the plan was an equitable remedy not available under Section 502(a)(1)(B). *Id.* at 445. The high court, however, remanded the case for a determination whether reformation and other equitable relief would be allowed under Section 502(a)(3) for breach of fiduciary duty. *Id.* If the alternative Section 502(a)(3) claim brought by the plaintiffs in *Amara* had been dismissed at the pleading stage—the very relief Humana now seeks against Victory—the Supreme Court could not have relied on Section 502(a)(3) as a potential alternative ground for the relief the district court awarded.

Today, in the wake of *Amara*, there is no clear Fifth Circuit authority that addresses whether a plaintiff can alternatively plead claims under Section 502(a)(1)(B) and Section 502(a)(3) at the same time. District courts within the Fifth Circuit are split. Some district courts have adopted a narrow approach, holding that a plaintiff that seeks any relief under Section 502(a)(1)(B) is prohibited from bringing a breach of fiduciary duty claim or a procedural violation claim under Section 502(a)(3). *See, e.g., Wilson v. Blue Cross and Blue Shield of Tex.*, No. 4:16–CV–0436, 2017 WL 1215430, at *11 (S.D. Tex. Mar. 31, 2017) (because plaintiff "has the authority to assert a claim for the alleged improper denial of benefits under [Section 502(a)(1)(B) ]," she "may not also proceed under a [Section 502(a)(3) ] breach of fiduciary duty theory of relief."); *Sleep Lab at West Hous. v. Tex. Children's Hosp.*, No. H–15–0151, 2015 WL 3507894, at *10 (S.D. Tex. June 2, 2015) (finding that "claims for money damages under [Section 502(a)(1)(B) ] arising from wrongful denial of benefits cannot coexist with claims for equitable relief under [Section 502(a)(3) ]."); *Lopez v. Liberty Life. Assurance Co. of Bos.*, No. H–13–2460, 2013 WL 5774878, at *4 (S.D. Tex. Oct. 24, 2013) (because plaintiff "has a potential remedy under [S]ection 502(a)(1)(B)," she "is not entitled to relief under [Section 502(a)(3)'s] catchall provision.").

Other district courts in the Fifth Circuit have interpreted *Amara* as implicitly sanctioning the pleading of alternative means of relief under ERISA and have adopted the more expansive approach allowing the simultaneous pleading of claims under Sections 502(a)(1)(B) and 502(a)(3). *See, e.g., Peterson v. Liberty Life Assurance Co. of Bos.*, No. 1:15–CV–00204–SA–DAS, 2016 WL 3849693, at *3 (N.D. Miss. July 13, 2016) (denying motion to dismiss and allowing plaintiff to plead both claim for denial of benefits and claim for breach of fiduciary duty); *Currier v. Entergy Corp. Emp. Benefits Comm.*, No. 16–2793, 2016 WL 6024531, at *3–4 (E.D. La. Oct. 14, 2016) (finding that *Amara* compels the finding that a plaintiff can plead claims under multiple sections of 502(a)(1) and preserve alternative grounds for relief as the litigation develops). The *Peterson* court discussed the relevance of the *Amara* decision:

> *Amara* illustrates that the line between legal relief and equitable relief is not always boldly drawn, and the legal and factual bases for a plaintiff's claims may come into clearer focus as the litigation proceeds. Had the district court in *Amara* dismissed the breach of fiduciary duty claim at the pleading stage based on the mere presence of the legal claim for benefits, the equitable relief sanctioned by the Supreme Court would not have been available. Thus, the outcome Defendant seeks here would be inconsistent with the practice in *Amara*.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

*Peterson*, 2016 WL 3849693, at *3 (citation omitted). Permitting plaintiffs to assert both a Section 502(a)(1)(B) claim and a Section 502(a)(3) claim at the outset of a case "allows plaintiffs time to develop their trial strategy and preserve alternative grounds for relief until a later stage in the litigation." *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 309 (S.D. Tex. 2011), *aff'd sub nom. N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015).

***4** This Court finds the more expansive approach to be the more sensible approach at this juncture in the case. Though Victory "may not succeed on claims for both legal and equitable relief [under Sections 502(a)(1)(B) and 502(a)(3) ]" at trial, it may at this stage of the litigation "state as many separate claims or defenses as it has, regardless of consistency." *Peterson*, 2016 WL 3849693, at *3 (quoting FED. R. CIV. P. 8(d)(3) ). The Supreme Court's *Amara* decision expressly endorses the practice of pleading these causes of action in the alternative in the early stages of litigation, given the evolving nature of litigation and the uncertainty about what relief, in the end, will actually be granted. "[I]n an abundance of caution to provide plaintiffs all the process to which they are due," this Court finds that Victory should be permitted to plead its "claims for unpaid benefits under [Section 502(a)(1)(B) ], and for equitable remedies under [Section 502(a)(3) ], in the alternative." *Gilmour for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc.*, No. SA–17–CV–00510–FB (W.D. Tex. Apr. 25, 2018) (order sustaining objections to Report and Recommendation in part and adopting Report and Recommendation in part). This result is especially appropriate in this case because Victory has alleged that Humana's offsetting scheme may make it impossible for Victory to carry its burden under Section 502(a)(1)(B), leaving disgorgement, reformation or some other equitable remedy under Section 502(a)(3) necessary to fully compensate Victory. If this Court dismisses the Section 502(a)(3) claims now, Victory could be left without a viable remedy at trial despite having pled at the outset of the case claims for breach of breach of fiduciary duty and procedural violations under Section 502(a)(3). This is not an outcome the law should encourage.

Accordingly, this Court recommends that Humana's effort to dismiss Victory's claims for procedural violations pursuant to Section 502(a)(3) (Count 2) and breach of fiduciary duty pursuant to Section 502(a)(3) (Count 5) be denied.

**B. PROMISSORY ESTOPPEL**

It is black letter Texas law that when "a valid contract between the parties covers the alleged promise, promissory estoppel is not applicable to that promise. Instead, the wronged party must seek damages under the contract." *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App.—El Paso 1997, writ denied). With this proposition of law in mind, Humana argues that Victory cannot allege a viable promissory estoppel claim based on the same promise of payment that underlies its breach of contract claim. In response, Victory argues that its "claim for promissory estoppel is based on a different promise made to a different party than its breach of contract claim." (Dkt. 23 at 10). This Court agrees with Victory. The First Amended Complaint makes clear that the promises underlying the breach of contract claim and the promissory estoppel claim are separate and distinct.

**Breach of Contract:** "The promise underlying [Victory's] breach of contract claim is Humana's promise *to its subscribers* to pay benefits at a certain rate." (Dkt. 23 at 10) (emphasis in original). *See also* (Dkt. 17 at 13–14) ("The Humana Plans provide for payment of Victory's services to Humana Subscribers at various rates set forth in the applicable Humana Plans .... [Humana's] administration of these claims resulted in the payment ... in all cases substantially less than the reimbursements required under the Humana Plans."). Victory brings the breach of contract claim as an assignee on behalf of the insureds pursuant to a valid assignment of benefits form.

**Promissory Estoppel:** "The promise underlying the promissory estoppel claim is Humana's promise *to Victory* to pay benefits at a certain rate." (Dkt. 23 at 10) (emphasis in original). *See also* (Dkt. 17 at 6) ("To the extent that the terms of the actual Humana Plans provided for reimbursement less than the representations provided by Humana representatives, Victory performed its medical procedures under the mistaken impression that more favorable terms would control and in reliance on the information provided by Humana representatives."). Victory raises the promissory estoppel claim on its own behalf based on its communications with Humana representatives.

In short, Victory's contention in this lawsuit is that Humana promised *its insureds* that Humana would pay *x* under the Humana Plans (the breach of contract claim), but Humana separately promised *Victory* that Humana would pay *y* for providing healthcare services to Humana's insureds (the promissory estoppel claim). These promises are different promises and, as a result, Victory may proceed with its promissory estoppel claim despite the existence of a breach of contract claim. *See Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965) (finding a promissory estoppel claim is not barred when the promise underlying the promissory estoppel claim is a different promise than that underlying the breach of contract claim).

***5** Humana argues that although Victory contends in its response to the Motion to Dismiss that the promissory estoppel claim is based on a different promise than the promise giving rise to the breach of contract claim, Victory does not set forth such allegations in the First Amended Complaint. This is important, Humana asserts, because the fate of Victory's promissory estoppel claim rests on the allegations contained in the First Amended Complaint, not the response to the Motion to Dismiss. This Court readily agrees that the purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint and allegations raised in a response that cannot be found in the complaint should not be considered. But that is not the case here. As noted above, the First Amended Complaint specifically references both Humana's promise to its subscribers that it would pay benefits at a certain rate *and* Humana's promise to Victory that it would reimburse healthcare services at a higher rate. Moreover, since this court must "accept[ ] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," the benefit of the doubt will be given to Victory if there is any dispute as to the sufficiency of such allegations. *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quotation marks and citation omitted). As a result, this Court recommends that Humana's request to dismiss the promissory estoppel claim be denied.

## C. NEGLIGENT MISREPRESENTATION

Humana also seeks dismissal of Victory's negligent misrepresentation claim, arguing that the economic loss doctrine bars such a claim because Victory asserts the same damages for its breach of contract claim as it does for its negligent misrepresentation claim.

Under the economic loss doctrine, a plaintiff cannot bring a claim for negligent misrepresentation unless the plaintiff can show that he suffered an injury that is "distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The question presented in this case is whether the damages Victory claims for breach of contract and negligent misrepresentation are the same. If the damages are the same, Victory's claim for negligent misrepresentation is barred by the economic loss rule. If the alleged damages are not the same, Victory may proceed with its negligent misrepresentation claim.

Victory maintains the damages alleged for negligent misrepresentation and breach of contract are distinct. Victory argues that negligent misrepresentation damages are the amounts Humana promised to pay Victory directly, giving credit for payments received. By contrast, Victory contends the breach of contract damages are the benefits owed under the plans but not paid. An example might provide some assistance to understanding this issue: assume the Humana Plans specified that an insured would be paid $1000 for a knee replacement, Humana representatives told Victory that Humana would be reimbursed the usual customary charges for the surgery (assume that amount turns out to be $1500), and Humana reimbursed Victory $800 for the medical services provided. With these numbers in mind, Victory's position is that its breach of contract damages amount to $200 (the $1000 in benefits owed under the Humana Plans—the $800 Humana paid for the medical services provided). Meanwhile, Victory argues that its negligent misrepresentation damages equal $700 (the $1500 that represented the usual and customary charges Humana promised to pay Victory—the $800 Humana paid for the medical services provided). As this example plainly illustrates, the damages asserted by Victory for negligent misrepresentation and breach of contract are not the same.

In arguing that Victory seeks the same damages for the breach of contract and negligent misrepresentation claims, Humana points to the schedules attached to the First Amended Complaint that provide a summary of the damages alleged at this early stage of the litigation. This Court spent considerable time before, during and after the oral hearing on the Motion to

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 

Dismiss analyzing those schedules. It is not clear from that review exactly how, specifically, the damage numbers in the schedules are calculated. But the Court can discern—both from a reading of the First Amended Complaint and the schedules—that the damages for negligent misrepresentation and breach of contract are different. As such, this Court finds the analysis presented by the district court in *Team Healthcare / Diagnostic Corp. v. Blue Cross and Blue Shield of Texas* particularly instructive:

> ***6** Because the alleged injury will not be determined based on whether the unpaid claims were actually covered by the contracts, but on whether or not Defendant made coverage misrepresentations that resulted injustifiable reliance by Plaintiff, the injury alleged is distinct, separate, and independent from economic losses recoverable under its breach of contract claims. Plaintiff might recover under the negligent misrepresentation claim even if it cannot recover under its breach of contract claims. The economic loss rule therefore does not bar its negligent misrepresentation claim, and Defendant's motion to dismiss the claim is denied.

No. 3:10–cv–1441–bh, 2012 WL 1617087, at *5 (N.D. Tex. May 7, 2012). This Court feels that Victory should, at this early stage in the litigation, be able to proceed on its negligent misrepresentation claim. Accordingly, this Court finds that the injuries alleged for breach of contract are "distinct, separate, and independent" from the injuries resulting from negligent misrepresentation, and recommends that the motion to dismiss the negligent misrepresentation claim be denied. If, as the case progresses, Humana believes it can show that the damages alleged under the breach of contract claim and the negligent misrepresentation claim are the same, it can, of course, move for summary judgment based on the economic loss rule.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Defendants Humana Health Plan of Texas Inc. and Humana Insurance Company's Partial 12(b)(6) Motion to Dismiss Certain Non–Viable Claims Alleged in Plaintiffs' First Amended Complaint (Dkt. 18) be DENIED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

### All Citations

Slip Copy, 2018 WL 2945628

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.